# EXPERT REPORT

## CASE: PARK V. KIM

Submitted by:

**Dr. John M. Garofalo, MD, FACOG**

**Reviewed Documents**

1. EXHIBIT B_ D med records, p.31
2. EXHIBIT C_ med rec, MIRAE
3. EXHIBIT D_ med rec ROSEMOM
4. Medical Records_ Queens Surgical Care Center (Defendant Dr. Kim)_11.27, 2018

**Clinical Summary**

Plaintiff visited Defendant for the first time on November 16, 2017 as her symptoms indicated that she was likely pregnant. Defendant told Plaintiff that it's too early to determine whether Plaintiff was pregnant or not, and asked Plaintiff to come later. During her second visit on November 21, 2017, Defendant confirmed that the plaintiff was indeed pregnant and performed a suction curettage on November 27, 2017. At the time of the procedure, the defendant failed to examine the tissue obtained from the suction curettage to determine the volume of tissue removed or the presence of chorionic villi. Approximately one week after the suction curettage, a pathology report indicated that there was no evidence of chorionic villi or embryonic tissue in the sample.

On December 13, 2017, Defendant Dr. Kim performed an ultrasound examination that revealed an eight week viable intrauterine pregnancy. Dr. Kim then admitted his failure to terminate plaintiff's pregnancy. On December 19, 2017, two physicians in South Korea examined the plaintiff, including the use of ultrasound test, and confirmed a viable intrauterine pregnancy. on December 27, 2017, a repeat suction curettage was performed.

The past history of prior first trimester abortions approximately 10 years ago was appreciated.

**Background**

Suction curettage is a safe and efficacious procedure for first trimester termination of pregnancy. The failure rate of the procedure is inversely related to the gestational age at the time the procedure is performed. At five weeks since the last menstrual period (LMP) the failure rate is 1/100. This decreases to 1/500 at 7 weeks since LMP. Following suction curettage, it is incumbent upon the surgeon to evaluate the tissue removed from the uterus in order to ascertain the completeness of the procedure so as to rule out persistent pregnancy and a ectopic pregnancy. The standard of care requires that the tissue is examined by "floating" and backlighting the tissue. This standard was clearly documented in the National Abortion Federation in 2015[1] as follows:

> *Standard 13.1. Termination of pregnancy must be confirmed prior to the woman leaving the facility or further evaluation must be initiated.*
> *Recommendation 13.1.1. Evacuated uterine contents should be examined before the woman leaves the facility.*
> *Recommendation 13.1.2. In first-trimester terminations, flotation of tissue*

[1] Deutsch FE. 66727 NAF S1-National Abortion National Abortion Federation Clinical Policy Guidelines.

*should be used to identify products of conception, including gestational sac.*
*Option 13.1.2.1. Backlighting of tissue may be useful.*
*Option 13.1.2.2. Sending the evacuated uterine contents for additional pathological examination is not required.*
*Standard 13.2. When insufficient tissue or incomplete products of conception are obtained, the patient must be reevaluated.*
*Recommendation 13.2.1. Re-aspiration, serial quantitative Hcg, and/or ultrasonographic examination should be considered.*
*Recommendation 13.2.2. In the first trimester, ectopic pregnancy should be considered.*

## Expert Opinion

It is my opinion that the defendant deviated from the standard of care as follows:

1. The defendant failed to inform the plaintiff of the differential risk of failed suction curettage from 5 weeks to 7 weeks.  If she had been aware of the increased risk of failure, she would likely have deferred the procedure for 1-2 weeks.
2. The defendant failed to examine the aspirated tissue prior to the plaintiff's departure from the facility. If the tissue had been examined, the patient could have been offered an repeat suction curettage at that time or additional testing to rule out persistent pregnancy.
3. The defendant failed to inform the plaintiff of the pathology report in a timely manner. If she had been aware of the absence of chorionic villi, she would have had the option to undergo a more prompt suction curettage.

The history of prior abortion was not a risk factor for failed termination of pregnancy.

## Expert Qualifications

*In regarding my expertise to opine in this case, I have been actively involved providing surgical termination of pregnancy in both the first and second trimester for over 40 years. I am a board certified Obstetrician/Gynecologist. I am licensed to practice in Connecticut, and have recently been the Director of Minimally Invasive Gynecology, the Associate Director of Gynecology and an Attending Physician in Obstetrics and Gynecology at Norwalk Hospital, in Norwalk, Connecticut. I have been appointed as an assistant clinical professor of Obstetrics and Gynecology and Reproductive Sciences at Larner College of Medicine, University of Vermont and Assistant Clinical Professor of Obstetrics and Gynecology at Ross University. I practiced OB/GYN for more than 38 years until the time of my retirement in December 2020. I am familiar with the applicable standards of care for medical and surgical termination of pregnancy as well as the management of the associated potential complications.*

**<u>Concluding Statements</u>**

*I believe within a reasonable degree of medical certainty that the care provided to Dr. Kim was below the accepted standard of care for the management of first trimester termination of pregnancy. This opinion is limited by the limited clinical records available for my review. I reserve the right to amend to this report in the event any additional materials become available.*

Respectfully submitted by,

**Dr. John M. Garofalo, M.D. FACOG**

9/12/2021