UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MINHYE PARK,                                    Civil Docket No.: 1:25-cv-789

                          Plaintiffs,

              -against-

JUDGES BARRINGTON D. PARKER, ALISON J. NATHAN, and SARAH A. L. MERRIAM
of the United States Court of Appeals for the Second Circuit, in their individual capacities;
JUDGE PAMELA K. CHEN and MAGISTRATE JUDGE LOIS BLOOM of the United States
District Court for the Eastern District of New York, in their individual capacities;
CATHERINE O'HAGAN WOLFE, in her official and individual capacities as Clerk of the
Second Circuit; DAVID COON and TERRENCE M. CONNORS, in their official capacities as
members of the Committee on Admissions and Grievances; OPENAI, INC.,

                          Defendants.
-------------------------------------------------------------------X

## CORRECTED SECOND AMENDED COMPLAINT

### NATURE OF THE ACTION

1. This action challenges a series of ultra vires, non-judicial, retaliatory, and unconstitutional actions taken by federal judges and the Clerk of the United States Court of Appeals for the Second Circuit, which deprived Plaintiff Park of due process, equal protection, access to courts, and her First Amendment right to petition the government for redress.

2. Although the federal judiciary is ordinarily protected by broad doctrines of immunity, the actions challenged herein involve non-judicial administrative conduct, taken without jurisdiction, and often after the Second Circuit mandate had issued, placing these acts outside the scope of judicial immunity. Defendant Wolfe, in particular, acted in her administrative capacity when issuing, publishing, and disseminating the disciplinary referral.

1

3. The action also asserts a product-liability claim against OpenAI, Inc. arising from GPT-3.5's creation of a fabricated legal citation that triggered unlawful disciplinary actions, retaliatory conduct, and cascading litigation disadvantages that injured Plaintiff Park's ability to litigate her medical malpractice and related cases.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States, including the First and Fifth Amendments, and claims brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Declaratory and injunctive relief is authorized under 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction over related state-law claims under 28 U.S.C. § 1367.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claims occurred in this district, and certain defendants reside or conduct official functions within the Southern District of New York.

## III. PARTIES

6. Plaintiff Minhye Park is a natural person and a resident of South Korea who litigated a medical malpractice matter in the Eastern District of New York and appealed to the Second Circuit.

7. Defendants Judges Barrington D. Parker, Alison J. Nathan, and Sarah A. L. Merriam

2

are federal judges of the U.S. Court of Appeals for the Second Circuit. They are sued in their individual capacities, only for non-judicial administrative acts outside the scope of judicial immunity.

8.    Defendants Judge Pamela K. Chen and Magistrate Judge Lois Bloom are federal judges of the U.S. District Court for the Eastern District of New York and are sued in their individual capacities solely for ultra vires actions not covered by judicial immunity.

9.    Defendant Catherine O'Hagan Wolfe is the Clerk of the Court for the U.S. Court of Appeals for the Second Circuit and is sued in both her official and individual capacities for administrative actions taken without jurisdiction.

10. Defendants David Coon and Terrence M. Connors are members of the Committee on Admissions and Grievances and are sued in their official capacities.

11. Defendant OpenAI, Inc. is a corporation that develops and distributes large language models including GPT-3.5, whose product defects and failures to warn foreseeably contributed to the harms alleged.

### IV. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

At all times relevant to this action, each Defendant acted individually and in concert with others, and each is responsible for the acts and omissions of their agents, employees, and co-conspirators, whether named or unnamed, who participated in the conduct alleged herein.

3

### A. Underlying Medical Malpractice Case and Discovery History in *Park v. Kim*

12.    Plaintiff Minhye Park initiated a medical malpractice action in the Eastern District of New York against Dr. David Dennis Kim, who admitted to negligence causing severe injury to Plaintiff. The medical evidence—including Plaintiff's expert confirmation and Dr. Kim's own statements—established that a lawful abortion performed ten years earlier was medically irrelevant.

13. Despite this, defense counsel **Hayley Newman** falsely asserted that a "defense expert" deemed Plaintiff's decade-old abortion records relevant. This "expert" did not exist. Relying solely on Newman's false statement, Magistrate Judge Lois Bloom and Judge Pamela K. Chen compelled repeated, duplicative discovery responses and later dismissed Plaintiff's case for alleged noncompliance—ignoring a 351-page record showing Plaintiff had complied and that defense counsel was noncompliant.

14. Plaintiff moved for sanctions against Hayley Newman on September 22, 2021, and again on March 15, 2022, pursuant to Federal Rules of Civil Procedure 11 and 26, citing discovery misconduct and false statements. Both motions were denied without explanation, to shield them from sanctions, further demonstrating bias in favor of Newman and her firm Hoguet Newman Regal & Kenney, LLP (HPMB). Despite Dr. Kim's own admission of malpractice and Plaintiff's expert's confirmation that a lawful abortion ten years prior was unrelated to her injuries, Judges Chen and Bloom adopted Newman's false assertion—unsupported by any defense expert—that such abortion records were relevant.

15. On August 11, 2021, Judges Bloom and Chen raised a "minimum wage" issue sua sponte—despite no party disputing or raising it. In practice, such estimates related to a worker's wage were irrelevant to the claims. The later AI-citation issue was triggered by Defendants Bloom and Chen and Hayley Newman (who is not a defendant in this case).

16. Judges Bloom and Chen knowingly Judges Bloom and Chen knowingly disregarded Dr. Kim's admission of malpractice and the expert evidence refuting any causal connection to Plaintiff's abortion ten years earlier. Newman continued filing frivolous discovery motions despite Plaintiff providing multiple HIPAA authorizations.

17. Judges Bloom and Chen then issued a **baseless "discovery warning"** to manufacture procedural grounds for dismissal—despite Plaintiff's demonstrated compliance.

18. Newman further harassed Plaintiff by demanding an overnight deposition in Plaintiff's time zone. Plaintiff sought protective relief, but Judges Chen and Bloom either ignored or denied her motions. These irregularities culminated in a biased dismissal that deprived Plaintiff of adjudication on the merits, forcing her to appeal.

## B. Subsequent Litigation and Retaliation
*(Park v. Newman)*

19. In a related matter, *Park v. Newman*, Judges Chen and Bloom intentionally arranged for the case to be reassigned to themselves and imposed a discriminatory 5:00 p.m. ECF filing restriction on Plaintiff alone, deviating from the standard 24-hour filing access granted to all other litigants.

20. They sua sponte denied Plaintiff's pre-motion request for summary judgment—

supported by documentary evidence of record—before opposition papers were even filed, and without providing any reasoning. They likewise sua sponte denied Plaintiff's motion for recusal, ignored multiple meritorious motions, and refused to correct a docketing error where Plaintiff's timely appeal, filed with the mandatory $605 fee, was never entered on the docket. The motion to correct was summarily denied. These procedural abuses, combined with the discriminatory filing restrictions, deprived Plaintiff of impartial adjudication, procedural fairness, and meaningful court access reflecting structural bias and predetermined hostility toward Plaintiff.

### C. Appeal to the Second Circuit (Judges Parker, Nathan, and Merriam)

#### *Phase One — January 30, 2024: Merit Panel Referral and Public Dissemination*

21. The appellate merit panel affirmed the dismissal without reviewing the record, including the 351-page appendix showing Plaintiff's compliance and documenting Newman's misconduct, including false statement (August 11, 2021, conference transcript). The panel also imposed costs and attorney's fees without a Rule 38 motion and without a finding of frivolity, violating FRAP 38.

22. On January 30, 2024, Judges Parker, Nathan, and Merriam issued a sua sponte

disciplinary referral based on a single AI-generated citation referring to minimum-wage estimation—a non-dispositive factual detail irrelevant to the appeal and undisputed by the parties, in violation of Federal Rule of Civil Procedure 11(d) and Rule 11(c)(3), and without any

adversarial proceedings or show-cause order, and without any finding of bad faith or fraudulent intent.

23. The citation related to wage estimation for a plaintiff with no income history, a non-dispositive factual issue that was neither material to the appeal nor disputed by the parties. By acting without a live controversy or adversarial presentation on the issue, the panel exceeded its authority under Article III of the Constitution, which limits judicial power to actual "cases" or "controversies." The referral was thus procedurally improper and constitutionally invalid. The action therefore lacked constitutional authority and was **ultra vires**.

24. The panel then published publicly the disciplinary referral  on PACER and disseminated it to over 100 media outlets, in violation of Judiciary Law § 90(10) and Local Rule 46.2, which require confidentiality of disciplinary matters until final adjudication. This publication caused substantial reputational damage to Plaintiff, creating defamatory implications about her case and counsel.

25.  Plaintiff's counsel was then compelled to disclose the referral to her client and report the communication back to the court, an egregious breach of attorney-client privilege.

26. The referral publicly implied that Plaintiff's litigation contained misconduct warranting discipline, even though no actual analysis or factual findings were made and no misconduct by Plaintiff occurred.

### *Phase Two — July 23, 2024: Grievance Panel Referral Issued Without Jurisdiction*

27.  The Grievance Panel issued a second disciplinary referral on July 23, 2024, nearly five months after the mandate issued on February 23, 2024. Because the mandate divested the Court of jurisdiction, any subsequent disciplinary actions without recalling the mandate were **void**.

28**.** This referral was issued shortly after Plaintiff sued **Hayley Newman on July 7, 2024** for false statements and misconduct. The timing reflects clear **retaliatory motive**, targeting Plaintiff because she exercised her legal rights.

*Phase Three — December 30, 2024: Committee Hearing Notice and Expanded Inquiry*

29**.** On December 27, 2024, Plaintiff filed a federal civil complaint against Judges Parker, Nathan, and Merriam. **Three days later**, the Committee issued a sudden hearing notice—exactly one year after the Merit Panel referral—further evidencing retaliation.

30**.** The Committee's April 13, 2025 investigation report **expanded the inquiry far beyond the AI citation**, improperly reviewing Plaintiff's unrelated litigation history, administrative delays caused by court personnel, and other immaterial matters. This violated the jurisdictional limits of **Local Rule 46.2**, which allows inquiry only into potential violations of the New York Rules of Professional Conduct.

31**.** The Committee disseminated confidential materials, including investigative reports, via **unsecured email**, violating both **Local Rule 46.2** and **Judiciary Law § 90(10)**. These breaches directly harmed Plaintiff Park by enabling defamatory statements and weaponization by opposing counsel.

32. The Second Circuit offers **no appellate mechanism** for reviewing Committee actions, leaving Plaintiff without any neutral forum to challenge the unlawful proceeding—an additional due-process violation.

33. Plaintiff Park's counsel repeatedly requested dismissal of the referral based on:

**(1)** lack of jurisdiction after the February 23, 2024 mandate;

**(2)** Rule 11(d)'s exemption for discovery filings;

**(3)** absence of clear-and-convincing evidence required by Local Rule 46.2(b)(2)(A), (G);

**(4)** failure to issue a Rule 11(c)(3) show-cause order;

**(5)** violations of Local Rule 46.2 and § 90(10) through unsecured emails;

**(6)** ultra vires expansion of the investigation;

**(7)** absence of any ethical rule regulating AI-generated content;

**(8)** retaliatory timing of the December 30, 2024 hearing notice;

**(9)** unreasonable 20-month delay in resolving the matter contrary to Local Rule 46.2(b)(5);

**(10)** unlawful initiation of the referral process, violating due process and threatening Plaintiff's appellate rights, credibility, and access to justice.

34. These defects caused concrete harm to Plaintiff, including deprivation of a fair appeal; impairment of her ability to vindicate her claims; reputational damage flowing from publication of confidential disciplinary materials; defamation-type harms caused by third parties citing the unlawful referral; intimidation and retaliation intended to chill Plaintiff's constitutional right to petition the courts. the Committee and involved judges rendered the entire disciplinary process ultra vires, void, defamatory, retaliatory, and unconstitutional, causing direct injury to Plaintiff.

9

**D. Patterns of Misconducts by Clerk of Court Catherine O'Hagan Wolfe**

35.  On February 5, 2024, Plaintiff filed a motion to vacate the judgment. On February 14, 2024, Clerk of Court Catherine O'Hagan Wolfe struck the motion from the docket without judicial review, without a judge's order, and without authority. Plaintiff subsequently filed follow-up requests on June 5 and August 14, 2024 seeking a ruling on the motion, but Wolfe again struck these filings without judicial signature, explanation, or legal basis.

36. On February 12, 2024, Plaintiff filed a motion to stay the mandate. Despite this pending motion, the Second Circuit issued the mandate on February 23, 2024, without adjudicating the stay motion, violating FRAP 41.

37. After the mandate issued, the Second Circuit nevertheless issued a disciplinary referral on July 23, 2024, even though jurisdiction had already ended on February 23, 2024. This occurred during a period when Plaintiff had already sued attorney Hayley Newman (on July 9, 2024), further evidencing retaliatory animus.

38. On January 16, 2025, Plaintiff moved to recall the mandate. Wolfe struck the motion without judicial review, without authority, and without providing any citation, reasoning, or explanation, again acting in a decisional capacity forbidden to clerks.

39. Plaintiff also filed motions on January 14 and March 25, 2025, to vacate the disciplinary referral. On March 26, 2025, the Clerk denied the motion as "lacking jurisdiction," even though the court had previously exercised jurisdiction to issue the July 2024 referral, revealing selective enforcement, inconsistent treatment, and bias.

40. Wolfe repeatedly struck or denied substantive post-judgment motions without judicial

10

action, in violation of 28 U.S.C. § 46, which provides that only judges may decide motions. These improper acts deprived Plaintiff of appellate review, access to the Court, and any opportunity to correct judicial errors.

41. On April 11 and May 1, 2024, costs and attorney's fees totaling $8,622.20 were taxed against Plaintiff without notice or a Rule 38 motion, and without a finding of frivolity, violating FRAP 39 and Plaintiff's due-process rights.

42. Plaintiff repeatedly sought to correct the record, but Defendant Wolfe engaged in a pattern of obstruction that included:

a. struck motions without judicial authorization;

b. blocked filings;

c. concealed submissions that were timely and valid;

d. prevented the Court from reviewing evidence favorable to Plaintiff; and

e. acted with retaliatory animus because Plaintiff challenged misconduct.

43.  As a result of Wolfe's actions, Plaintiff was denied meaningful appellate review, deprived of the ability to correct judicial mistakes, and suffered materially altered litigation outcomes.

### E. Issuance of a Second Unauthorized Disciplinary Referral in *Lee v. Delta* (May 19, 2025)

43. On May 19, Wolfe knowingly and willfully signed and entered an order styled as a "disciplinary referral" against Plaintiff's counsel in *Lee v. Delta* even though no disciplinary action had been initiated by any judge, panel, or authorized body in that case. Wolfe acted without factual findings, without legal authority, and beyond the scope of her ministerial duties.

11

44. This referral occurred after Plaintiff filed lawsuits against Wolfe and the Merit Panel judges, demonstrating retaliatory motive. Wolfe's actions were ultra vires, exceeded the ministerial scope of her office, and constituted an unconstitutional exercise of judicial power in violation of Article III.

45. Wolfe unlawfully disseminated disciplinary materials—including confidential notices—in violation of Judiciary Law § 90(10) and Local Rule 46.2, causing reputational harm that directly disadvantaged Plaintiff Park in her litigation and supporting a defamation-type injury.

46. On August 18, 2025, Wolfe issued an invalid order denying Plaintiff's petition for rehearing en banc without judicial votes, violating FRAP 35(c) and 28 U.S.C. § 46(c). On August 20, 2025, Wolfe unlawfully taxed $222.20 in costs without Delta filing a bill of costs and before the mandate issued, violating FRAP 39(d) and 28 U.S.C. § 1920. On August 25, 2025, Wolfe prematurely issued the mandate.

47. On September 30, 2025, Wolfe issued an "Order Requiring Response to Committee's Report" without any Committee member signatures, without a vote, without authorization, and without a judicial directive, further usurping judicial power.

48. Wolfe's conduct damaged Plaintiff's legal interests and professional reputation by generating unlawful disciplinary entries, creating defamatory implications, and enabling opposing counsel to weaponize these irregular proceedings.

49. Wolfe retaliated against Plaintiff Park for protected First Amendment activity— including filing appeals, motions, and civil actions challenging judicial misconduct—constituting unconstitutional viewpoint discrimination and retaliation.

50. Wolfe's misconduct was administrative and ministerial—not quasi-judicial—and is not entitled to absolute immunity. Her acts involved discretion wholly outside her lawful authority.

51. By the acts and omissions described above, Wolfe, acting under color of federal law, deprived Plaintiff Park of clearly established constitutional rights to due process, equal protection, and access to the courts, actionable under Bivens and the Fifth Amendment.

**52.** As a direct and proximate result of Wolfe's unlawful conduct, Plaintiff suffered concrete injury, including reputational harm and defamation-type injuries; loss of appellate rights and meaningful judicial review; impairment of her ability to fairly litigate current and future cases; loss of settlement and litigation value; emotional distress; and damage to her credibility and legal claims.

## OPENAI, INC.

53. Upon information and belief, GPT-3.5, the large language model at issue in this case, was developed by OpenAI, Inc. ("OpenAI") and trained on a broad corpus of internet-based and publicly available textual materials through September 2021. It was publicly released in or about November 2022.

54. In its 2019 formal comment to the United States Patent and Trademark Office, OpenAI expressly acknowledged both the capabilities and the inherent risks of generative AI systems, stating:

"By analyzing large corpora... AI systems can learn patterns inherent in human-generated data and then use those patterns to synthesize similar data which yield increasingly

compelling novel media in modalities as diverse as text, image, and audio."
"We are acutely aware of both the promises and perils of issues related to generative AI systems."

*– OpenAI, Comment Regarding Request for Comments on Intellectual Property Protection for Artificial Intelligence Innovation, Docket No. PTO–C–2019–0038*

55. Upon information and belief, despite being aware of these risks, OpenAI failed to disclose to downstream users—including legal professionals—the phenomenon of "hallucinated outputs," i.e., GPT-3.5's tendency to generate plausible-sounding but fictitious legal citations. OpenAI did not designate the model as experimental, nor did it caution against its use in legal or regulatory contexts.

56. OpenAI further acknowledged in its public filings that:

"Legal uncertainty on the copyright implications of training AI systems imposes substantial costs on AI developers and so should be authoritatively resolved."

57. At the time of GPT-3.5's public release in November 2022, and based on its prior public statements, OpenAI had actual and constructive knowledge of the risks associated with the model generating fictitious legal citations. Upon information and belief, despite this knowledge, OpenAI failed to take remedial measures—such as implementing technical safeguards, issuing explicit warnings, or restricting use in legal contexts—to ensure product reliability and to prevent foreseeable misuse by legal practitioners.

## V. CLAIMS FOR RELIEF

14

## COUNT I
## CAUSES OF ACTION

**First Cause of Action — Bivens Claim (Fifth Amendment – Due Process Violations) Against Defendants Parker, Nathan, Merriam, Wolfe, Chen, and Bloom**

58.  Plaintiff repeats and realleges ¶¶ 1–57 as if fully set forth herein.

59.  Each of the Federal Defendants acted individually and ultra vires, outside any lawful judicial or administrative authority, in depriving Plaintiff of due process guaranteed by the Fifth Amendment.

### A. Procedural Due Process / Access to Courts

60.  Defendants Parker, Nathan, and Merriam issued the January 30, 2024 disciplinary referral **without jurisdiction**, without reviewing the 351-page appendix, without notice or opportunity to be heard, and in violation of FRCP 11(d), FRAP 46, Local Rule 46.2, and Judiciary Law § 90(10). These actions were non-judicial, unauthorized, punitive, and retaliatory, and therefore actionable under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

61.  Defendant Wolfe acted outside any judicial delegation by:

(1) striking Plaintiff's motions;

(2) removing and concealing timely post-judgment filings, including but not limited to motion to vacate judgment;

(3) prematurely issued or facilitated issuance of the mandate;

(4) issuing and publishing disciplinary materials without judicial approval or panel authorization in *Lee v. Delta*; and

(4) issued a "Report and Recommendation" without any Committee signatures, signing the September 30, 2025 "Order Requiring Response" without committee member signatures.

These non-judicial acts deliberately obstructed Plaintiff's access to the courts.

62. Defendants Chen and Bloom repeatedly denied all Plaintiff motions without analysis, ignored two sanctions motions against attorney Newman, imposed Plaintiff-only filing restrictions, and refused recusal despite clear conflicts.

These actions were not judicial acts under *Stump v. Sparkman* but administrative abuses, retaliatory, and taken in complete absence of jurisdiction.

63. Defendants' misconduct deprived Plaintiff of:

(1) notice;

(2) opportunity to be heard;

(3) impartial adjudication;

(4) access to the courts, access to appellate review and a fair process;

(5) the right to seek redress without retaliation.

### B. Stigma-Plus Due Process

64. Under the "stigma-plus" doctrine, a constitutional due-process violation occurs when government officials publish false, stigmatizing statements plus impose an additional tangible burden or alteration of legal status.

65. Defendants Parker, Nathan, and Merriam publicly issued the January 30, 2024 disciplinary referral without jurisdiction and without any factual findings, thereby falsely imputing professional misconduct.

70. Defendant Wolfe issued and publicly disseminated a second unauthorized disciplinary referral on May 19, 2025 in *Lee v. Delta*, and posted the related materials in violation of Judiciary Law § 90(10).

66. These publications were not judicial acts, because they were not tied to any opinion, order, adjudication, or judicial function—and instead were administrative, punitive, and ultra vires.

67. The "plus" element is met because Defendants' publications caused:

(a) loss of professional opportunities,

(b) ongoing disciplinary investigation and burdens,

(c) reputational destruction,

(d) litigation disadvantage, and

(e) diminished earning capacity.

68. Plaintiff was never provided notice, hearing, opportunity to respond, or any meaningful process before the stigmatizing statements were made public.

69. Defendants violated Plaintiff's "stigma-plus" due-process rights under established Second Circuit precedent.

70. But for the Defendants' unlawful and retaliatory conduct, Plaintiff would not have suffered reputational harm, loss of legal practice opportunities, emotional distress, litigation disadvantage, and ongoing deprivation of liberty and property interests.

71. Plaintiff is entitled to compensatory damages, punitive damages, and all equitable relief deemed proper.

**Second Cause of Action — First Amendment Retaliation (Bivens)
Against Defendants Parker, Nathan, Merriam, Wolfe, Chen, and Bloom**

72. Plaintiff repeats and realleges ¶¶ 1–71 as if fully set forth herein.

73. Plaintiff engaged in multiple categories of protected First Amendment activity, including:

(1) filing civil actions;

(2) filing sanctions motions;

(3) objecting to judicial misconduct;

(4) opposing attorney Newman's false statements;

(5) filing *Park v. Newman* on July 7, 2024; and

(6) filing suit against the Second Circuit merit-panel judges and Clerk Wolfe.

74. Immediately following Plaintiff's filing of *Park v. Newman*, and immediately after Plaintiff sued the merit-panel judges and Wolfe in this action, federal defendants escalated retaliatory disciplinary actions, including the July 23, 2024 unauthorized disciplinary referral issued after the mandate and without jurisdiction.

75. Defendants' adverse actions lacked any legal basis, occurred outside their judicial authority, and were timed directly in response to Plaintiff's litigation and speech, demonstrating retaliatory intent.

76. Such actions would chill a person of ordinary firmness from continuing to pursue litigation, filing motions, or criticizing government officials—and did in fact chill Plaintiff's ability to litigate, earn income, maintain reputation, and continue protected petitioning activity.

77. Defendants acted with retaliatory animus, selectively targeting Plaintiff for discipline, concealment of filings, expanded investigations, and post-mandate actions that would not have been taken against any similarly situated attorney.

78. In further retaliation, Defendant Catherine O'Hagan Wolfe engaged in two separate unlawful acts after Plaintiff sued her in this action:

(1) On **May 19, 2025**, Wolfe maliciously issued an unauthorized and jurisdictionally void disciplinary referral in *Lee v. Delta*, without judicial approval, panel authorization, factual findings, vote, or legal basis, and publicly disseminated it in violation of Judiciary Law § 90(10), solely because Plaintiff named her as a defendant; and

(2) On **September 30, 2025**, Wolfe unilaterally issued the "Order Requiring Response to Committee's Report" without any Committee member signatures, authorization, or vote, again

18

acting ultra vires and in retaliation for Plaintiff's protected speech and filings.

These actions were not judicial, not ministerial, not protected by immunity, and were motivated by pure retaliatory animus.

79. Plaintiff suffered economic, professional, and emotional harm as a result.

### THIRD CAUSE OF ACTION — EQUAL PROTECTION- SELECTIVE ENFORCEMENT (FIFTH AMENDMENT)
### Against Defendants Parker, Nathan, Merriam, Wolfe, Chen, and Bloom
*(Bivens claim for discriminatory and selective treatment)*

80. Plaintiff repeats and realleges ¶¶ 1–79 as if fully set forth herein.

81. Defendants subjected Plaintiff to discriminatory and selective adverse treatment not imposed on similarly situated attorneys or litigants, including:

(a) issuing disciplinary referrals without jurisdiction;

(b) expanding investigations beyond the referral;

(c) publishing confidential disciplinary materials in violation of Judiciary Law § 90(10);

(d) refusing to adjudicate Plaintiff's motions while crediting false statements by attorney Newman;

(e) striking, concealing, or blocking Plaintiff's filings;

(f) imposing Plaintiff-only filing restrictions;

(g) performing post-mandate actions outside any lawful authority; and

(h) refusing recusal despite clear conflicts.

82. Other attorneys—including attorney Newman—engaged in documented misconduct, including false statements, fabricated expert disclosures, and discovery abuse, yet no discipline, investigation, or adverse action was taken against them.

19

83. The differential treatment was intentional, irrational, arbitrary, and motivated by animus, retaliation, and hostility toward Plaintiff's protected filings and challenges to judicial misconduct.

84. The Federal Defendants' actions deprived Plaintiff of equal protection under the Fifth Amendment and caused severe reputational, professional, economic, and emotional damages.

### FOURTH CAUSE OF ACTION — DEFAMATION (LIBEL) & VIOLATION OF JUDICIARY LAW § 90(10)
### Against Defendants Parker, Nathan, Merriam, and Wolfe

85. Plaintiff repeats and realleges ¶¶ 1–84 as if fully set forth herein.

91. Judiciary Law § 90(10) requires strict confidentiality of all attorney-disciplinary proceedings unless and until a final determination is made. Defendants were prohibited from publicly releasing, disseminating, or posting any disciplinary materials at the preliminary stage.

92. Defendants Parker, Nathan, and Merriam violated § 90(10) and defamed Plaintiff by issuing and publicly disseminating the January 30, 2024 disciplinary referral without jurisdiction, without factual findings, without review of the record, without a judicial opinion, without any Rule 11 or adversarial process, and without any lawful authority. The referral falsely implied that Plaintiff had engaged in sanctionable professional misconduct.

93. Defendant Catherine O'Hagan Wolfe likewise violated § 90(10) and defamed Plaintiff by publicly issuing and posting disciplinary materials—including the May 19, 2025 *Lee v. Delta* referral—without judicial approval, without Committee authorization, and without any final determination, thereby falsely signaling that Plaintiff was the subject of substantiated disciplinary findings.

94. Each publication contained false statements and defamatory assertions, or clear defamatory implications, that Plaintiff had committed unethical or sanctionable professional

20

misconduct. These publications were made available to the press, the public, the docketing system, and other third parties.

95. These actions were administrative, punitive, and ultra vires, not judicial in nature. None were issued as part of any adjudication, order, ruling, or function "normally performed by a judge." Accordingly, they are not protected by judicial or quasi-judicial immunity.

96. The unlawful publications generated widespread media coverage, including national and international legal news outlets, causing foreseeable reputational damage, professional isolation, loss of client confidence, and cascading harm to Plaintiff counsel's career and standing in the legal community.

97. The statements constitute **defamation per se**, because imputations of dishonesty, unethical conduct, or professional misconduct made against a licensed attorney are inherently defamatory and give rise to presumed damages without the need to plead special harm.

98. Defendants acted with actual malice, or at minimum with reckless disregard for the truth, because they:

(a) knew they lacked jurisdiction;

(b) issued and disseminated materials without factual findings;

(c) failed to review the record;

(d) knowingly violated Judiciary Law § 90(10)'s confidentiality mandate; and

(e) acted in retaliation for Plaintiff's protected filings and lawsuits.

99. The defamatory publications were widely reported by national and international media outlets, legal news services, and internet platforms, foreseeably resulting from the Defendants' intentional violation of § 90(10). These publications were viewed by attorneys, courts, and potential clients, severely damaging Plaintiff's professional reputation.

100. As a direct and proximate result of Defendants' defamation, Plaintiff suffered severe reputational injury, loss of professional opportunities, emotional distress, loss of client relationships, community stigma, and diminished earning capacity, and ongoing professional harm.

101. Plaintiff seeks compensatory damages, punitive damages, and all further relief this Court deems just and proper.

**FIFTH CAUSE OF ACTION: SEVERE EMOTIONAL DISTRESS (Ultra Vires Non-Judicial Misconduct)**
**Against Defendants Parker, Nathan, Merriam, and Wolfe**

102. Plaintiff repeats and realleges ¶¶ 1–101 as if fully set forth herein.

103. Defendants Parker, Nathan, and Merriam publicly issued a disciplinary referral without jurisdiction, factual findings, adjudication, or lawful authority, falsely suggesting professional misconduct.

104. Defendant Wolfe publicly disseminated unauthorized disciplinary referral on May 19, 2025 by her own in *Lee v. Delta*, struck filings, concealed motions in *Park v. Kim*, and issued orders without Committee signatures on September 30, 2025.

105. These acts were **administrative, punitive, and ultra vires**, not judicial in nature, and thus not protected by judicial immunity.

106. Defendants' conduct foreseeably caused Plaintiff severe emotional distress, including humiliation, anxiety, reputational trauma, loss of sleep, and significant interference with daily functioning.

107. The emotional harm was substantial and would be intolerable to a reasonable person.

108. Plaintiff seeks compensatory and punitive damages.

## FIFTH CAUSE OF ACTION: OPENAI, INC.

109. Plaintiff realleges and incorporates by reference the allegations set forth in Paragraphs

1 through 108 as if fully set forth herein.

### Negligence – Failure to Warn
(*Restatement (Second) of Torts §§ 388, 324A*)

110. Upon information and belief, at the time of GPT-3.5's public release in November

2022,

OpenAI owed a duty of reasonable care in the design, testing, and distribution of the product. This

duty included an obligation to warn foreseeable users, especially legal professionals, of the

model's known limitations, including its tendency to generate false legal citations.

111. OpenAI breached this duty by failing to provide adequate warnings, disclaimers, usage

restrictions, or accuracy checks, despite knowing that GPT-3.5 outputs could and would be relied

upon in sensitive professional contexts.

112. Plaintiff and Plaintiff's counsel were foreseeably harmed by GPT-3.5's output. As a

direct result of relying on a fabricated citation generated by GPT-3.5 in a reply brief, Plaintiff's

counsel was subject to a sua sponte disciplinary referral, resulting in reputational damage,

emotional distress, and professional harm.

113. The causal connection between OpenAI's failure to warn and Plaintiff's injury is clear.

Had adequate warnings or disclaimers accompanied GPT-3.5, counsel would not have relied on

its output in legal filings. The lack of any such notice directly led to the inclusion of the

hallucinated citation, which in turn became the basis for the disciplinary action.

23

114. Plaintiff's injuries include reputational damage, loss of professional standing, litigation

expenses related to disciplinary proceedings, and emotional and psychological harm. These

injuries were proximately caused by OpenAI's failure to warn of known and foreseeable risks.

115. OpenAI's omissions constitute actionable negligence under established principles of

tort law and product liability doctrine. Similar to failures to warn in the context of pharmaceuticals,

consumer products, and software, OpenAI's conduct justifies liability for the harm caused by

unmarked professional dangers.

**Strict Product Liability – Design Defect and Failure to Warn**
*(Restatement (Third) of Torts: Products Liability § 2)*

116. Upon information and belief, GPT-3.5 is a commercial product released into the stream

of commerce for general use, including in writing, research, and professional applications such as

legal drafting.

117. The model's known propensity to fabricate legal content constitutes a design defect.

Upon information and belief, OpenAI did not incorporate adequate safeguards, such as citation

verification, reliability disclaimers, or model warnings, and failed to prevent foreseeable misuse

in legal contexts.

118. OpenAI is strictly liable under product liability law because:

The product was defective when it left OpenAI's control; It was used in a reasonably

foreseeable manner (e.g., by an attorney conducting legal research); The product's unverified and

misleading outputs directly caused injury to Plaintiff and Plaintiff's counsel.

24

119. The lack of any safety mechanisms, fail-safes, or user alerts rendered the product unreasonably dangerous, particularly in high-stakes legal and regulatory settings. No ordinary user would expect GPT-3.5 to generate fictitious case law without any indication of unreliability.

120. The injuries sustained by Plaintiff and her counsel—disciplinary proceedings, reputational harm, and litigation-related emotional and economic injuries—were all proximately caused by the defective nature of GPT-3.5.

## Breach of Implied Warranty of Merchantability
*(U.C.C. § 2-314; N.Y. U.C.C. § 2-314)*

121. OpenAI marketed GPT-3.5 as a reliable commercial tool suitable for writing assistance, research support, and professional use, thereby warranting its fitness for ordinary purposes.

122. Upon information and belief, a core function of GPT-3.5—text generation—was defective. The model regularly produced fictitious legal citations without indicating that the content was unreliable or synthetically generated.

123. This failure violated the implied warranty of merchantability. The product was not fit for its ordinary purpose—namely, generating reliable written content for professional use.

124. Plaintiff's damages—including the disciplinary referral, reputational harm, litigation

costs, disruption to professional standing, and ongoing emotional and psychological injury—were a direct and foreseeable result of reliance on a product that was not fit for its advertised or expected purpose.

125. OpenAI is liable under warranty law because it failed to ensure that GPT-3.5 would perform as reasonably expected in commercial and professional contexts, or to disclaim such expectations explicitly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and award the following relief:

**A. Declaratory Relief**

1. A declaration that the January 30, 2024 disciplinary referral was unlawful, unauthorized, void, and issued without jurisdiction.

2. A declaration that the July 23, 2024 post-mandate disciplinary referral was unlawful, unauthorized, and void.

3. A declaration that the May 19, 2025 *Lee v. Delta* referral was unlawful, unauthorized, retaliatory, and void.

4. A declaration that the September 30, 2025 "Order Requiring Response" was issued without authorization and is void.

5. A declaration that the Defendants violated Plaintiff's constitutional rights under the First and Fifth Amendments.

6. A declaration that **OpenAI's product was defective** and that its failure to provide adequate warnings rendered GPT-3.5 unreasonably dangerous and negligently designed.

## B. Injunctive Relief

7. An order sealing, retracting, and expunging all unauthorized disciplinary referrals issued against Plaintiff.

8. An order directing the Federal Defendants to cease all retaliatory and unauthorized disciplinary actions.

9. An order requiring correction of public records reflecting improper disciplinary actions.

10. An order requiring OpenAI to implement adequate warnings, safeguards, and validation systems for legal outputs.

11. An order requiring Defendants to publish a written apology and correction in the *same manner, through the same channels, and with the same level of public visibility* as the original defamatory publications, including but not limited to court dockets, public notices, and any media or online outlets where the unlawful publications appeared.

## C. Compensatory Damages

12. Compensatory damages for reputational harm, emotional distress, professional injury, loss of business opportunities, and economic losses.

13. Damages for interference with Plaintiff's professional property rights, including the ability to practice law free from unlawful disciplinary taint.

14. Damages arising from OpenAI's defective product, negligent design, and failure to warn, including all resulting professional and economic harm.

## D. Punitive Damages

15. Punitive damages against Defendants Parker, Nathan, Merriam, and Wolfe for willful, malicious, and retaliatory conduct.

27

16. Punitive damages against OpenAI for reckless disregard of known safety risks in deploying an AI system capable of generating fabricated legal citations.

## E. Attorneys' Fees and Costs

17. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and all other applicable laws.

## F. Any Other Relief

18. Any further relief the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: December 2, 2025
Uniondale, New York

Respectfully submitted,

JSLLAW OFFICE P.C.

*/s/ Jae S. Lee*
JAE S. LEE
626 RXR PLAZA
UNIONDALE, NY 11556