UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MINHYE PARK,

        Plaintiff,

        v.

HON. BARRINGTON D. PARKER, ET AL.,

        Defendants.

25-CV-00789 (MAB) (SDA)

**OPINION**

MARK A. BARNETT, United States Judge:[1]

Plaintiff, Minhye Park ("Plaintiff" or "Ms. Park"), brings this action against Judges Barrington D. Parker, Alison J. Nathan, and Sarah A.L. Merriam, federal judges of the U.S. Court of Appeals for the Second Circuit ("Second Circuit"), in their individual capacities; Judge Pamela K. Chen and Magistrate Judge Lois Bloom, federal judges of the U.S. District Court for the Eastern District of New York ("EDNY"), in their individual capacities; Catherine O'Hagan Wolfe, Clerk of the Court for the Second Circuit ("Ms. Wolfe"), in her official and individual capacities; and David Coon and Terrence M. Connors, members of the Committee on Admissions and Grievances ("the Committee" or "the Grievance Committee"), in their official capacities (collectively, "Federal Defendants").[2]  Corrected Second Am. Compl. ("SAC" or "Second Amended

---

[1] Chief Judge Mark A. Barnett of the U.S. Court of International Trade, sitting by designation.

[2] Plaintiff argues that "[t]he Federal Defendants have not demonstrated authorization to represent the individual defendants in their personal capacities."  Mem. of Law in Opp'n to Defs.' Mots. to Dismiss ("Pl.'s Opp'n") at 7, ECF No. 173.  This court has previously rejected this argument and will not reconsider it here.  *See* Order (Aug. 29, 2025) at 1–

Court No. 25-CV-00789                                                      Page 2

Complaint") ¶¶ 7–10, ECF No. 132.  Plaintiff also names OpenAI, Inc. ("OpenAI") as a

defendant.  *Id.* ¶ 11.

Federal Defendants and OpenAI (collectively, "Defendants") move to dismiss all

claims against them in the Second Amended Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6).  Mem. of Law in Supp. of the Fed. Defs.' Mot. to Dismiss the

SAC ("Fed. Defs.' Mem."), ECF No. 172; Mem. of Law in Supp. of Def. OpenAI Found.'s

Mot. to Dismiss the SAC ("OpenAI's Mem."), ECF No. 170; Reply Mem. of Law in

Further Supp. of the Fed. Defs.' Mot. to Dismiss the SAC ("Fed. Defs.' Reply"), ECF No.

175; Reply Mem. of Law in Supp. of Def. OpenAI Found.'s Mot. to Dismiss the SAC

("OpenAI's Reply"), ECF No. 174.  Plaintiff opposes the motions.  Pl.'s Opp'n.  For the

reasons set forth below, the motions to dismiss are **GRANTED**.

## BACKGROUND AND PROCEDURAL HISTORY

I.      **Factual Allegations**[3]

    **A.  Related Lawsuits**

Plaintiff's Second Amended Complaint makes a series of allegations based upon

other lawsuits brought either by Plaintiff or by her attorney Jae S. Lee ("Attorney Lee"),

---

3, ECF No. 115.  Unless otherwise specified, ECF citations are to filings in the instant matter, Ct. No. 25-00789.

[3] The background contained herein primarily summarizes factual allegations from the Second Amended Complaint relevant to this opinion.  However, the Second Amended Complaint contains certain conclusory allegations and characterizations of official conduct that are contradicted by official court records.  Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation

in her own name, in the Eastern District of New York and appealed to the Second

Circuit.  This case principally follows from a medical malpractice action that Plaintiff

brought in the Eastern District of New York.  SAC ¶ 12; *see also Park v. Kim*, No. 20-

CV-02636 (PKC), 2022 WL 3643966 (E.D.N.Y. Aug. 24, 2022).  Plaintiff filed motions

for sanctions against defense counsel in that case, Haley Newman ("Attorney

Newman"), for alleged discovery misconduct and false statements.  SAC ¶ 14.

Magistrate Judge Lois Bloom and Judge Pamela K. Chen denied those motions.  *Id.*

Plaintiff alleges that the judges concluded that certain of the Plaintiff's medical records

were relevant, issued a "discovery warning" to Plaintiff, and denied Plaintiff's motion for

protective relief from a deposition requested by Attorney Newman.  *Id.* ¶¶ 14, 17–18.

Plaintiff separately filed an action against Attorney Newman and her law firm,

alleging professional misconduct committed during the course of the litigation in *Park v.

Kim*.  *See Park v. Newman*, No. 24-CV-4770 (PKC) (CHK), 2026 WL 873090 (E.D.N.Y.

Mar. 30, 2026).  That case was reassigned to Judges Chen and Bloom, and Plaintiff

---

modified).  The court is not required to accept as true factual allegations that are
contradicted "by facts of which the court may take judicial notice."  *Coggins v. Cnty. of
Nassau,* 988 F. Supp. 2d 231, 243 (E.D.N.Y. 2013) (citation modified).  "[C]ourts can
consider court documents or matters of public record at the motion to dismiss stage
where both parties had notice of their contents and the documents are integral to the
complaint."  *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 112 (S.D.N.Y.
2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012); *see also Cortec Indus., Inc. v. Sum Holding
L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (holding that, in deciding the motion to dismiss, the
district court was entitled to consider documents that "plaintiffs had either in [their]
possession or had knowledge of and upon which they relied in bringing suit").  Thus,
this court's opinion is also informed by the facts of which it may take judicial notice,
particularly court records specific to the underlying litigation that gave rise to Plaintiff's
claims.

claims that the judges denied her pre-motion request for summary judgment and motion for recusal, as well as her motion to correct a docketing error. SAC ¶¶ 19–20.

The Second Circuit affirmed the dismissal of *Park v. Kim*, imposing costs and attorney's fees against Plaintiff. SAC ¶ 21; *see also id.* ¶ 41; *Park v. Kim*, 91 F.4th 610 (2d Cir. 2024). Plaintiff claims that she filed a motion to vacate the judgment on February 5, 2024, and that on February 14, 2024, Ms. Wolfe "struck [it] from the docket without judicial review, without a judge's order, and without authority." SAC ¶ 35. The court record reflects that Ms. Wolfe struck the motion to vacate judgment from the docket because the motion did not "comply with the Court's prescribed filing requirements" and the defect was not cured, even after notice had been provided to counsel. Order (Feb. 14, 2024), *Park v. Kim*, 91 F.4th 610 (2d Cir. 2024) (No. 22-2057), ECF No. 208.

On February 12, 2024, Plaintiff filed a motion to stay the mandate, and on February 23, 2024, the Second Circuit issued the mandate. SAC ¶ 36. Plaintiff alleges that the Second Circuit issued the mandate without adjudicating Plaintiff's motion to stay the mandate. *Id.* The record indicates that the court denied Plaintiff's motion on February 23, 2024, prior to issuing the mandate. *See* Order (Feb. 23, 2024), *Park v. Kim*, 91 F.4th 610 (No. 22-2057), ECF No. 213; Mandate (Feb. 23, 2024), *Park v. Kim*, 91 F.4th 610 (No. 22-2057), ECF No. 214-1.

Plaintiff claims that Ms. Wolfe struck Plaintiff's follow-up requests on June 5 and August 14, 2024, seeking a ruling on the motion to vacate the judgment, "without judicial signature, explanation, or legal basis." SAC ¶ 35. The court record reflects that, in

Court No. 25-CV-00789                                                    Page 5

response to Plaintiff's letter on June 5, 2024, requesting review of the motion, the

Second Circuit provided a Case Status Update Notice stating that the appeal had been

closed.  Notice (June 5, 2024), *Park v. Kim*, 91 F.4th 610 (No. 22-2057), ECF No. 224.

According to the record, Plaintiff's motion on August 14, 2024, to vacate the judgment

was stricken from the docket because Plaintiff did not "comply with the Court's

prescribed filing requirements" and did not cure the defect despite notice.  Order (Aug.

19, 2024), *Park v. Kim*, 91 F.4th 610 (No. 22-2057), ECF No. 229.

Plaintiff further alleges that, on January 16, 2025, she moved to recall the

mandate, and that Ms. Wolfe "struck" the motion.  SAC ¶ 38.  The court record reflects

that Ms. Wolfe signed an order for the court denying Plaintiff's motion.  Order (Jan. 16,

2025), *Park v. Kim*, 91 F.4th 610 (No. 22-2057), ECF No. 243.

### B.  Disciplinary Referrals

Plaintiff alleges that on January 30, 2024, the Second Circuit panel issued a

disciplinary referral ("January 2024 referral") concerning Attorney Lee, based upon her

inclusion of a citation to a non-existent case generated by GPT-3.5, a "large language

model" developed by OpenAI, in a reply brief.  SAC ¶¶ 22, 53, 112.  Plaintiff further

alleges that the Second Circuit panel published the referral on PACER and

disseminated it to over 100 media outlets.  *Id.* ¶ 24.  The court record indicates that the

Second Circuit panel referred Attorney Lee to the court's Grievance Panel in a

published opinion.  *See Park*, 91 F.4th at 616.  That opinion was made public in the

normal course, and Plaintiff asserts no facts to support the allegation that the Second Circuit otherwise disseminated the referral to media outlets.

On July 23, 2024, the disciplinary referral was advanced to the Grievance Committee ("July 2024 referral"). SAC ¶ 27. Plaintiff characterizes this step as a "second disciplinary referral" issued by the Grievance Panel. *Id.* The record indicates that this transfer to the Committee was the next step in the consideration of the same matter referred by the Second Circuit panel to the Grievance Panel. *See* Notice of Hr'g, ECF No. 32-2 (indicating that the July 2024 referral was to the Committee);[4] *see also Park*, 91 F.4th at 616 (referring Attorney Lee to the Grievance Panel "for consideration of a referral to the [Committee]").

Plaintiff claims that Ms. Wolfe's March 26, 2025, denial of Plaintiff's motion to vacate the disciplinary referral "reveal[ed] selective enforcement, inconsistent treatment, and bias." SAC ¶ 39. The record reflects that the court returned the motion because "the case was mandated on 04/11/2024 and motion to recall the mandate was denied on 01/16/2025," such that "this Court no longer has jurisdiction to entertain [the]

---

[4] The Grievance Committee issued this hearing notice on December 30, 2024. Plaintiff claims to have filed a civil complaint against the Second Circuit panel three days earlier and avers, albeit in a conclusory manner, that this timing "further evidenc[es] retaliation." SAC ¶ 29. The docket of this case shows that Plaintiff commenced this case in late January 2025 or early February 2025 (based on filing errors in the initial submission), a month after the Committee issued the hearing notice. *See infra* p. 8.

request."  Notice (Mar. 26, 2025), *Park v. Kim*, 91 F.4th 610 (No. 22-2057), ECF No. 246.

Plaintiff alleges that the Committee issued an investigation report on April 13, 2025, which included a review of Plaintiff's litigation history and administrative delays that Plaintiff alleges were caused by court personnel.  SAC ¶ 30.  Plaintiff further alleges that "[t]he Committee disseminated confidential materials, including investigative reports, via unsecured email," allegedly causing harm to Plaintiff by "enabling defamatory statements and weaponization by opposing counsel."  *Id.* ¶ 31 (emphasis omitted).[5]

Plaintiff further claims that on May 19, 2025, Ms. Wolfe "entered an order styled as a 'disciplinary referral' against [Attorney Lee] in [*Lee v. Delta Air Lines, Inc.*, No. 24-850-CV, 2025 WL 1375326 (2d Cir. May 13, 2025)],"[6] without authorization from a judge or panel.  SAC ¶ 43*bis*.[7]  Plaintiff alleges that Ms. Wolfe also "disseminated disciplinary materials," including confidential notices that "caus[ed] reputational harm that directly disadvantaged Plaintiff Park in her litigation and support[s] a defamation-type injury."  *Id.* ¶ 45.  According to Plaintiff, "[o]n August 18, 2025, Ms. Wolfe issued an invalid order denying Plaintiff's petition for rehearing en banc without judicial votes."  *Id.* ¶ 46.  The

---

[5] Plaintiff does not otherwise explain this "weaponization" assertion or identify the opposing counsel to which she refers given that the underlying case of *Park v. Kim* had been concluded.

[6] Plaintiff does not allege that she has any direct connection with the *Lee v. Delta Air Lines* case beyond the fact that her attorney here was the plaintiff in that case.

[7] There are two paragraphs labeled ¶ 43 in the complaint.  The court refers to the second instance in which the paragraph was so labeled as ¶ 43*bis*.

court order itself states that the motion was considered by "[t]he active members of the Court" and denied, with Ms. Wolfe signing for the court as Clerk of Court.  *See* Order (Aug. 18, 2025), *Lee v. Delta Air Lines, Inc.*, 2025 WL 1375326 (2d Cir. May 13, 2025) (No. 24-850), ECF No. 110.  Plaintiff also alleges that Ms. Wolfe "taxed $222.20 in costs without Delta filing a bill of costs and before the mandate issued," "prematurely issued the mandate," and issued an unauthorized "Order Requiring Response to Committee's Report."  SAC ¶¶ 46–47.

### C.  OpenAI

Plaintiff avers that "[i]n [OpenAI's] 2019 formal comment to the United States Patent and Trademark Office, OpenAI expressly acknowledged both the capabilities and the inherent risks of generative AI systems."  *Id.* ¶ 54.  According to Plaintiff, OpenAI did not disclose the phenomenon of "hallucinated outputs" to downstream users.  *Id.* ¶ 55.  Plaintiff also alleges that, at the time of GPT-3.5's public release in November 2022, Open AI was aware of the risks associated with the model generating fictitious legal citations, but did not "implement[] technical safeguards, issu[e] explicit warnings, or restrict[] use [of the model] in legal contexts . . . to ensure product reliability and to prevent foreseeable misuse by legal practitioners."  *Id.* ¶ 57.

### II.    Procedural Background

Plaintiff commenced this action on or about January 28, 2025.  Compl., ECF Nos. 1 (filed Jan. 28, 2025; marked as deficient), 9 (filed Feb. 4, 2025; accepted).  The complaint listed both Ms. Park and Attorney Lee as plaintiffs and asserted claims against the judges on the Second Circuit panel that heard the appeal in *Park v. Kim* and

Court No. 25-CV-00789                                                                                     Page 9

issued the January 2024 referral to the Grievance Panel.  *See* Compl. ¶¶ 5–7, ECF No. 9.

Plaintiff filed two motions for a temporary restraining order ("TRO") and a preliminary injunction.  Notice of Mot. for TRO and Prelim. Inj., ECF No. 31; Notice of Am. Mot. for TRO and Prelim. Inj., ECF No. 94; *see also* Notice of Mot. for Recons. and TRO and Prelim. Inj., ECF No. 70.  This court denied Plaintiff's motions for a TRO, for reconsideration of the first denial, and for a preliminary injunction.  Order (Apr. 3, 2025) ("Apr. 3 Order"), ECF No. 36; Order (Apr. 14, 2025), ECF No. 73; Order (Aug. 19, 2025), ECF No. 103; Order (Feb. 12, 2026) ("Feb. 12 Order"), ECF No. 163.

On April 4, 2025, Plaintiff filed a first amended complaint that removed Attorney Lee as a plaintiff and introduced new claims against Judges Chen and Bloom, Ms. Wolfe, Messrs. Coon and Connors, and OpenAI.  First Am. Compl. and Verified Req. for Inj. Relief, ECF No. 48.  Plaintiff filed the Second Amended Complaint on December 3, 2025.[8]  SAC, ECF No. 132.  Plaintiff sought leave to further amend the operative complaint to reinstate Attorney Lee as Plaintiff, Pls.' Mot. for Leave to Am. to Reinstate Jae S. Lee, Esq., as a Pl., ECF No. 145; however, her motion was denied without prejudice for failure to comply with Local Civil Rule 15.1(a), as occurred with Plaintiff's

---

[8] Plaintiff initially filed a motion for leave to file the Second Amended Complaint on April 15, 2025, Notice of Mot. for Leave to file SAC, ECF No. 74; however, that motion was denied without prejudice for failure to comply with Local Civil Rule 15.1, Order (Apr. 22, 2025), ECF No. 75.  The court did not grant Plaintiff's motion for leave to amend until November 17, 2025, Order (Nov. 17, 2025), ECF No. 124, because of repeated filing errors in Plaintiff's subsequent attempts to refile the motion, which ultimately resulted in Magistrate Judge Aaron instructing chambers staff to correctly file Plaintiff's motion papers to move the case forward, *see* Order (Aug. 27, 2025), ECF No. 110.

attempt to file her Second Amended Complaint, *see* Order (Dec. 29, 2025), ECF No. 151. The court granted Plaintiff the opportunity to refile by January 12, 2026. *See id.* Plaintiff, however, filed her motion for leave to file the Third Amended Complaint ("TAC") the day after the deadline. *See* TAC, ECF No. 153; Notice of Mot. for Leave to File TAC, ECF No. 154. Yet again, Plaintiff failed to comply with Local Civil Rule 15.1. *See* Order (Jan. 20, 2026) ("Jan. 20 Order") at 1, ECF No. 157. In the Jan. 20 Order, the court stated that "[i]f Plaintiff fails to file a proper motion by [January 23, 2026], and absent consent to amendment by the Defendants, this action will move forward with the [Second Amended Complaint] as the operative pleading." *Id.* at 2. In response to the Jan. 20 Order, Plaintiff refiled the proposed Third Amended Complaint on January 23, 2026, *see* TAC, ECF No. 158, but did not refile her motion for leave to file the Third Amended Complaint until the next day, Notice of Mot. for Leave to File TAC, and accompanying Mem. of Law in Supp. of Pls.' Mot. for Leave to File TAC, ECF No. 159. In addition to filing her motion for leave after the court's deadline, Plaintiff again failed to comply with Local Civil Rule 15.1.[9]

The court denied Plaintiff's later-filed motion for an extension of time, *nunc pro tunc,* "to cure any technical filing issue." Order (Feb. 20, 2026) ("Feb. 20 Order") at 1, ECF No. 167 (citing Pl.'s Letter Mot., ECF No. 165). The court declared that "this action will proceed with the [Second Amended Complaint] as the operative pleading." Feb. 20 Order at 2.

---

[9] The docket for this case displays repeated deficient filings by Plaintiff throughout this proceeding.

## JURISDICTION AND STANDARD OF REVIEW

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The court may exercise supplemental jurisdiction over related state-law claims pursuant to 28 U.S.C. § 1367(a).  However, "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . (3) the district court has dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c)(3).  Indeed, when all "federal claims are dismissed before trial, the state claims should be dismissed as well."  *Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 107 (2d Cir. 2022) (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998)); *cf. Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996) (affirming retention of state claims when judge had presided over those claims for a year and the plaintiff's federal claims were dismissed days before trial).  The court may decline to exercise supplemental jurisdiction when all federal claims are dismissed based on the doctrine of judicial immunity.  *Pollack v. Nash*, 58 F. Supp. 2d 294, 305 (S.D.N.Y. 1999); *see also Chris H. v. New York*, 740 F. App'x 740, 742 (2d Cir. 2018) (affirming dismissal of claims against the state and a state Supreme Court Justice in her official and individual capacities for reasons of sovereign and judicial immunity and affirming dismissal of state-law claims).

A court may only grant a motion to dismiss if the complaint lacks "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

U.S. at 678.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not

need detailed factual allegations, a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at

555 (citation modified); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice.").  "The court, in deciding a Rule 12(b)(6) motion to dismiss a complaint, is

required to accept all 'well-pleaded factual allegations' in the complaint as true." *Lynch

v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 679).

But the court is "not bound to accept as true a legal conclusion couched as a factual

allegation." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff brings claims against Federal Defendants for (1) violations of the First,

Fourth, and Fifth Amendments of the Constitution of the United States pursuant to

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388

(1971), (2) defamation and violation of New York Judiciary Law § 90(10), and (3) severe

emotional distress.  In addition, she asserts product-liability claims against OpenAI,

arising from GPT-3.5's creation of a fabricated legal citation upon which Attorney Lee

relied.

### I.    Federal Defendants

Federal Defendants move to dismiss all of Plaintiff's claims based upon the doctrine of judicial immunity.  Fed. Defs.' Mem. at 1.  Even if judicial immunity does not bar the claims, Federal Defendants argue that the constitutional claims cannot properly be brought as *Bivens* claims, and that Plaintiff lacks standing to allege the remaining claims.  *Id.* at 1–2.  Federal Defendants further argue that even if the claims could be brought under *Bivens* and Plaintiff otherwise has standing, the SAC fails to adequately plead the claims.  *Id.* at 2.

### A.  Judicial Immunity

Federal Defendants argue that all of Plaintiff's claims are barred by judicial immunity, which "shields the federal judges and those who perform administrative functions associated with the judicial process from Plaintiff's claims."  Fed. Defs.' Mem. at 6.

### 1.  Legal Framework

"[J]udges generally have absolute immunity from suits for money damages for their judicial actions." *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009).  However, "judicial immunity does not apply when the judge acts outside his judicial capacity, or when the judge takes action that, although judicial in nature, is taken in absence of jurisdiction." *Walker v. NYS Just. Ctr. for Prot. of People with Special Needs*, 493 F. Supp. 3d 239, 248 (S.D.N.Y. 2020) (citation modified).

"The factors determining whether an act by a judge is a judicial one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and

to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Bliven*, 579 F.3d at 210 (citation modified). "[A]cts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Id.* at 210. Such actions include "disbarring an attorney as a sanction for the attorney's contumacious conduct in connection with a particular case." *Id.* (citing *Bradley v. Fisher*, 80 U.S. 335, 354–57 (1871)).

"[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). That is, "a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." *Id.* at 356–57 (citation modified); *see also Bliven*, 579 F.3d at 209 ("[E]ven allegations of bad faith or malice cannot overcome judicial immunity."). There is a "clear absence" of jurisdiction when a judge clearly possesses "no jurisdiction over the subject-matter," such as a "probate court, invested only with authority over wills and the settlement of estates of deceased persons, [proceeding] to try parties for public offences" in subjects over which the court lacks jurisdiction. *Bradley*, 80 U.S. at 351–52.

"Absolute judicial immunity also extends to those who, at the direction of a judicial officer, perform administrative functions closely associated with the judicial process." *Dieujuste v. Sin*, 125 F.4th 397, 399 (2d Cir.), *cert. denied*, 146 S. Ct. 119 (2025) (holding that a judge and clerk of court were entitled to absolute judicial immunity because their filing of court documents and orders were "integral to the judicial process

and arose directly from a case before the court").  However, the court clerk's work need not "[be] at the explicit direction of a presiding judge" to be protected by judicial immunity.  *Hubbuch v. Small*, No. 25-956, 2026 WL 471800, at \*2 (2d Cir. Feb. 19, 2026).  "It is routine for a court to delegate to its employees the judicial function of managing dockets and assigning cases, such that those employees act with authorization or approval in conducting their work . . . even if a judge does not directly supervise every discrete decision the employees make."  *Id.* (citation modified).  Judicial immunity also extends to attorney disciplinary committees.  *See, e.g.*, *McKeown v. N.Y. State Comm'n on Jud. Conduct*, 377 F. App'x 121, 124 (2d Cir. 2010) ("Prosecutors, hearing examiners, and law clerks are eligible for absolute immunity, and those involved in preparing and adjudicating attorney discipline proceedings share analogous roles."); *Neroni v. Coccoma*, 591 F. App'x 28, 30 (2d Cir. 2015) ("[W]e have consistently extended quasi-judicial immunity to attorney disciplinary committees."); *Bernstein v. New York*, 591 F. Supp. 2d 448, 463 (S.D.N.Y. 2008) ("Attorney disciplinary proceedings are judicial in nature, so the presiding officers are protected by absolute immunity." (citation modified)).

### 2.  Analysis

#### i.  Judges

Plaintiff claims to be suing the federal judges in their individual capacities for non-judicial administrative acts outside the scope of judicial immunity.  SAC ¶¶ 7–8.  The

Court No. 25-CV-00789                                                    Page 16

court first addresses claims regarding the disciplinary referral before turning to other

acts at issue.

### a.  Disciplinary Referral

Plaintiff alleges that the Second Circuit panel issued the January 2024 referral "in

violation of Federal Rule of Civil Procedure 11(d) and Rule 11(c)(3)," SAC ¶ 22, without

jurisdiction, without notice or opportunity to be heard, and in violation of Local Rule 46.2

and Judiciary Law § 90(10), *id.* ¶ 60.[10]  Plaintiff argues that "the issuance and public

dissemination of a disciplinary referral after mandate, without jurisdiction and without

notice of hearing, constitutes ultra vires conduct not protected by immunity."  Pl.'s Opp'n

at 9.[11]

Federal Defendants argue that the court has already determined that Rule 11

applied to Plaintiff's filing containing the non-existent citation, namely, Plaintiff's reply

brief in the Second Circuit.  Fed. Defs.' Mem. at 8.  In addition, Federal Defendants

argue, the court has already explained that judges are "not required to issue a show

cause order pursuant to Rule 11(c)(3) prior to making a disciplinary referral."  *Id.* (citing

Apr. 3 Order).  Federal Defendants further argue that "even if Rule 11 didn't apply,

federal courts have inherent power to manage their own proceedings and control

---

[10] The court has previously found that the disciplinary referral did not violate these
provisions.  *See* Apr. 3 Order at 4–6 (discussing applicability of FRCP 11, compliance
with notice and opportunity requirement, and inapplicability of the confidentiality
provisions).
[11] This court has also previously addressed this claim.  *See* Feb. 12 Order at 7 ("Plaintiff
has offered no legal basis for the claim that the July 2024 referral, i.e., the Grievance
Panel's referral of Plaintiff's attorney to the Grievance Committee, was required to pre-
date the issuance of the mandate by the Second Circuit.").

conduct of those who appear before them," and that the referral was consistent with Local Rule 46.2.  *Id.* (citation modified).

Here, the issuance of the disciplinary referral was a judicial act because it was an "act[] . . . related to" the appeal that was before the panel, similar to a sanction imposed on an attorney for conduct towards a judge.  *See Bliven*, 579 F.3d at 210.  Moreover, the Second Circuit panel had jurisdiction to issue the disciplinary referral because judges have the authority to manage the conduct of attorneys appearing in their court. Thus, the claims against the judges related to the disciplinary referral are barred by judicial immunity.

### b.  Other Acts

Plaintiff asserts that Judges Chen and Bloom denied motions "without analysis," SAC ¶ 62, denied motions for sanctions against Ms. Newman and her firm, *id.* ¶ 14, imposed filing restrictions "on Plaintiff alone," *id.* ¶ 19, and "refused recusal despite clear conflicts," *id.* ¶ 62, and that the Second Circuit panel affirmed the dismissal of *Park v. Kim* "without reviewing the record," *id.* at ¶ 21.

Federal Defendants argue that each of the above-referenced rulings by the federal judges in *Park v. Kim* fall within scope of their judicial responsibilities.  Fed. Defs.' Mem. at 7.

Judicial immunity applies to each of these acts because the judges were acting within their judicial capacity and were not acting in the absence of jurisdiction.  Denying motions, imposing filing requirements, assigning cases, and affirming a lower court's decision are "acts arising out of, or related to, individual cases before the judge," *Bliven*,

579 F.3d at 210, and constituted decisions exercised in a matter over which the judges had jurisdiction.  Even Plaintiff's allegation that Judges Chen and Bloom "refused recusal" does not suggest that they acted in the "clear absence of all jurisdiction."  *See Tucker v. Outwater*, 118 F.3d 930, 933 (2d Cir. 1997) (discussing the U.S. Supreme Court's finding in *Stump*, 435 U.S. at 359, that the judge "acted within the broad jurisdictional grant conferred upon his court" and that his "failure to comply with elementary principles of due process" did not "preclud[e] an immunity defense of his action").  Thus, the claims against the judges relating to these acts are barred by judicial immunity.

### ii.  Clerk of Court

Plaintiff is suing Ms. Wolfe in her official and individual capacities for administrative actions allegedly taken without jurisdiction.  SAC ¶ 9.  Plaintiff alleges that "Wolfe repeatedly struck or denied substantive post-judgment motions without judicial action."  *Id.* ¶ 40.  Plaintiff argues that, with respect to her motion to vacate the Second Circuit judgment, which was "stricken without judicial reasoning, and removed from the docket," judicial immunity does not apply because "[t]he conduct at issue is not adjudication but prevention of adjudication."  Pl.'s Opp'n at 9.  Plaintiff also alleges that Ms. Wolfe "prematurely issued or facilitated issuance of the mandate," SAC ¶ 61, and issued an unauthorized disciplinary referral in *Lee v. Delta Air Lines*, *id.* ¶ 43*bis*.[12]

---

[12] Plaintiff also alleges that Ms. Wolfe "issued a 'Report and Recommendation'" and signed an "Order requiring Response" without committee signatures.  SAC ¶¶ 47, 61.  It is not clear to which documents Plaintiff is referring or why committee signatures were

Federal Defendants argue that Plaintiff's allegations against Ms. Wolfe "relate entirely to her efforts to assist the Second Circuit judges in the performance of their duties." Fed. Defs.' Mem. at 9. They assert that Ms. Wolfe's "oversight of the docket falls squarely within her judicial capacity," and that she signed an order assessing costs against Plaintiff pursuant to her authority "to issue orders on behalf of the court." *Id.* (citation modified).

Here, the allegations against Ms. Wolfe all relate to official duties.[13] Ms. Wolfe's actions are judicial functions "integrally related to an ongoing judicial proceeding." *See Hubbuch*, 2026 WL 471800, at *2 (holding that reclassifying motion for reconsideration, administratively sealing filings, reassigning motions, rejecting and delaying time-sensitive filings, and refusing to accept certain other submissions are "plainly judicial functions"). Furthermore, Ms. Wolfe's decision to strike the motion to vacate in response to unresolved filing deficiencies is plainly an exercise of a judicial function in relation to case management to which judicial immunity extends.[14] Thus, the claims against Ms. Wolfe are barred by judicial immunity.

---

necessary, leaving the court unable "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

[13] "The Clerk [of Court] processes all appeals filed in the Second Circuit, ensures compliance with FRAP and the Court's local rules, and issues the Court's orders and substantive decisions from the time the Court acquires jurisdiction with the filing of a notice of appeal through disposition and the issuance of the mandate at the end of the case." *Clerk's Office*, United States Ct. of Appeals for the Second Cir., https://www.ca2.uscourts.gov/clerk/clerks_office.html#:~:text=Clerk's%20Office&text=The%20Clerk%20of%20Court%20is,related%20forms%20and%20instructions%20current (last visited July 15, 2026).

[14] Plaintiff's characterizations are otherwise conclusory—she does not offer support for statements that Ms. Wolfe struck motions *without judicial action*, that she issued the

### iii. Committee Members

Plaintiff also sues certain members of the Grievance Committee, David Coon and Terrence M. Connors, in their official capacities, but she has failed to allege any claim specific to their actions.[15]  Even if Plaintiff's allegations against the Committee generally included claims made as to the named Committee members, the Committee members are also entitled to judicial immunity.  Judicial immunity extends to "those involved in preparing and adjudicating attorney discipline proceedings."  *See McKeown*, 377 F. App'x at 124.  Thus, the absence of claims against Messrs. Coon and Connors and the protection of their actions by judicial immunity require the court to grant the motion to dismiss Plaintiff's claims against these members of the Committee.

### B.  Bivens[16]

Plaintiff brings *Bivens* claims against the Federal Defendants.  She alleges violation of her due process and equal protection rights under the Fifth Amendment to

---

mandate *prematurely*, or that the disciplinary referral she issued in *Lee v. Delta Air Lines* was *unauthorized*.

[15] In the "Factual Background and Procedural History" section of the complaint, Plaintiff alleges that the Committee's issuance of a hearing notice three days after Plaintiff filed a complaint against the Second Circuit panel "evidence[es] retaliation," SAC ¶ 29, that the Committee's investigation report "improperly review[ed] Plaintiff's unrelated litigation history, administrative delays caused by court personnel, and other immaterial matters," *id.* ¶ 30, and that the Committee "disseminated confidential materials, including investigative reports, via unsecured email," *id.* ¶ 31.  These statements, interspersed with the factual background, are conclusory and do not state a claim against these members of the Committee.

[16] Judicial immunity from claims for monetary damages offers protection for Federal Defendants even if the *Bivens* claims were to survive because "[t]he only remedy available in a Bivens action is an award for monetary damages from defendants in their individual capacities." *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007). Nevertheless, for the sake of completeness, this court contemplates whether the *Bivens*

the U.S. Constitution, and that she was retaliated against for engaging in activity

protected by the First Amendment to the U.S. Constitution.  SAC ¶¶ 4, 54–84.

### 1.  Legal Framework

The U.S. Supreme Court, in *Bivens v. Six Unknown Named Agents of Federal*

*Bureau of Narcotics*, recognized a cause of action for a plaintiff to obtain relief for injury

resulting from federal agents' violation of his Fourth Amendment rights.  403 U.S. at

397.  Since then, the Court has extended *Bivens* to only two other causes of action.  In

*Davis v. Passman*, 442 U.S. 228, 244 (1979), the Supreme Court recognized a cause of

action for violation of the Due Process Clause of the Fifth Amendment, and in *Carlson v.*

*Green*, 446 U.S. 14, 24–25 (1980), the Court held that a *Bivens* remedy was available

for the violation of the Eighth Amendment protection against cruel and unusual

punishment.

Whether to recognize a *Bivens* claim in a particular case is determined by a two-

step inquiry that involves asking whether the case presents a "new context" and

whether "special factors" indicate that Congress may be better equipped to "weigh the

costs and benefits of allowing a damages action to proceed."  *Egbert v. Boule*, 596 U.S.

482, 492 (2022) (citation modified).  This two-step inquiry "often resolve[s] to a single

question: whether there is any reason to think that Congress might be better equipped

to create a damages remedy."  *Id.*  Moreover, "a court may not fashion a *Bivens* remedy

---

claims might proceed if judicial immunity were not available; it concludes that they
would not.

if Congress already has provided, or has authorized the Executive to provide, an alternative remedial structure."  *Id.* at 493 (citation modified).

"*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."  *Ziglar v. Abbasi*, 582 U.S. 120, 131 (2017).  The two-step test effectively "operates as a bar to a *Bivens* claim in all cases except, perhaps, those involving Fourth, Fifth, and Eighth Amendment claims factually indistinguishable from *Bivens*, *Passman*, or *Carlson*."  *Cohen v. United States*, 640 F. Supp. 3d 324, 337 (S.D.N.Y. 2022), *aff'd sub nom. Cohen v. Trump*, No. 23-35, 2024 WL 20558 (2d Cir. Jan. 2, 2024).

In *Egbert*, when "presented with the question whether to extend *Bivens* to [a new] context," the Supreme Court held that "there is no *Bivens* action for First Amendment retaliation" because "[t]here are many reasons to think that Congress, not the courts, is better suited to authorize such a damages remedy."  596 U.S. at 498–99; *Cohen*, 640 F. Supp. 3d at 337 ("[T]he Egbert Court[,] . . . seemingly rejecting the fact-specific inquiry set forth in its prior *Bivens* jurisprudence, . . . categorically held that 'there is no *Bivens* action for First Amendment retaliation.'").

### 2.  Parties' Arguments

Federal Defendants argue that even if the judges are not protected by judicial immunity, Plaintiff's *Bivens* claims against Federal Defendants would not survive dismissal because the Supreme Court has recognized a cause of action under *Bivens* in a limited number of cases.  Fed. Defs.' Mem. at 12 ("[R]ecognizing a cause of action under *Bivens* is a disfavored judicial activity." (quoting *Egbert*, 596 U.S. at 491)).

Federal Defendants explain that Plaintiff's First Amendment and Fifth Amendment claims arise in a new context because the constitutional rights at issue are different from previous cases recognizing a *Bivens* claim.  Fed. Defs.' Mem. at 13.  The courts in this circuit have declined to extend, on prior occasions, *Bivens* to a claim for due process violations under the Fifth Amendment, and a claim for equal protection beyond gender discrimination.  *Id.* at 13–14.

Plaintiff responds that her claims are not barred because this case does not implicate national security, immigration, or foreign policy concerns.  Pl.'s Opp'n at 9. Federal Defendants disagree that this is the proper inquiry.  Fed. Defs.' Reply at 5. Federal Defendants argue that Congress has also established alternative remedial structures, such as a mechanism for appealing the ruling or filing a complaint under the Judicial Conduct and Disability Act of 1980.  Fed. Defs.' Mem. at 14.  Plaintiff denies that an alternative remedy exists because she was prevented from obtaining review, Pl.'s Opp'n at 9, however, Federal Defendants argue that Plaintiff had "numerous avenues of relief" that she did not pursue, Fed. Defs.' Reply at 5–6.

### 3.  Analysis

Plaintiff's First Amendment retaliation claim is plainly foreclosed by *Egbert* such that the court need not consider it further.  *See Egbert*, 596 U.S. at 498–99; *Cohen*, 640 F. Supp. 3d at 337.  Plaintiff's Fifth Amendment claims do not pass the two-step test described in *Egbert*.  *See* 596 U.S. at 492.  Plaintiff's case arises in a new context because it bears little factual resemblance to the scenarios addressed in *Bivens*, *Davis*, and *Carlson*.  Specifically, Plaintiff's case concerns alleged due process and equal

protection violations under the Fifth Amendment in the context of a judicial proceeding, while *Bivens* concerned the Fourth Amendment's protection against unreasonable searches and seizures, 403 U.S. at 392; *Davis* concerned equal protection in the context of an administrative assistant facing discrimination on the basis of sex, 442 U.S. at 231; and *Carlson* concerned injuries suffered by an inmate in the hands of prison officials, 446 U.S. at 16.  While *Davis* did implicate the Due Process Clause of the Fifth Amendment, this similarity alone is not a basis for recognizing a new *Bivens* action. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 484 n.9 (1994) (comparing *Davis* with *Schweiker v. Chilicky*, 487 U.S. 412, 429 (1988), in which the Court refused to imply a *Bivens* action because Congress did not incorporate a damages remedy into its remedial scheme).

Special factors also indicate that Congress would be better equipped to weigh the costs and benefits of allowing a damages action to proceed.  The "long-established principle" of judicial immunity has been in place because of the desirability of a judicial officer to be "free to act upon his own convictions, without apprehension of personal consequences to himself."  *Stump*, 435 U.S. at 355.  Moreover, the availability of alternative remedies, such as appealing a ruling or filing a complaint under the Judicial Conduct and Disability Act of 1980, also advises against extending *Bivens* to this context.  *See Montesano v. New York*, No. 05 CV 10624 (GBD), 2006 WL 944285, at *4 (S.D.N.Y. Apr. 12, 2006) ("The proper avenue to challenge a judicial determination is on direct appeal, not by seeking a declaration that the presiding judge's prior decision violated the litigant's constitutional rights."); 28 U.S.C. § 351(a) ("Any person alleging

that a judge has engaged in conduct prejudicial to the effective and expeditious administration of the business of the courts . . . may file . . . a written complaint containing a brief statement of the facts constituting such conduct.").  Plaintiff avers that she was prevented from obtaining review, and yet she does not allege that she pursued or attempted to pursue any alternative avenues of relief.  Thus, applying the two-step inquiry governing the analysis of *Bivens* claims, the court finds that Plaintiff lacks a cause of action to bring her First and Fifth Amendment claims against the Federal Defendants.

### C.  Other Claims

The other claims against the Federal Defendants must also be dismissed. Plaintiff's defamation, violation of Judiciary Law § 90(10), and emotional distress claims arise from state tort law, so this court would only be able to exercise supplemental jurisdiction over these claims.  *See* 28 U.S.C. § 1367(c)(3).  Because Plaintiff has failed to state a federal claim upon which relief can be granted, this court declines to exercise jurisdiction over the state claims, consistent with the practice in the Second Circuit. *See, e.g., Jusino*, 54 F.4th at 107.

### II.    OpenAI

Plaintiff also sues OpenAI for negligence, strict product liability, and breach of implied warranty of merchantability.  SAC ¶¶ 109–25.  Defendant OpenAI argues that Plaintiff lacks standing and that her claims fail on the merits.  *See generally* OpenAI's Mem.  Because Plaintiff's product liability claims arise from state law, here too the court declines to exercise supplemental jurisdiction over these claims in the absence of a

federal claim upon which relief can be granted.  *See* 28 U.S.C. § 1367(c)(3); *Jusino*, 54 F.4th at 107.

### III.    Third Amended Complaint

Plaintiff argues that Defendants' motions are procedurally defective because they are directed at the Second Amended Complaint, which has been superseded and is no longer the operative pleading.  Pl.'s Opp'n at 5–7.  Plaintiff argues that the Third Amended Complaint became the operative pleading when she complied with the court's Jan. 20 Order, and that Defendants proceeded as if the Third Amended Complaint governed the case.  *Id.* at 6.

Defendants respond that the Second Amended Complaint is the operative pleading because, despite Plaintiff's multiple attempts to file a Third Amended Complaint, in each instance the filing was rejected as deficient.  Fed. Defs.' Reply at 2–3; *see also* OpenAI's Reply at 1–2.  Federal Defendants "submitted an opposition to Plaintiff's motion to amend in the event the Court overlooked these filing deficiencies," and this submission "did not constitute an acknowledgement that 'the [Third Amended Complaint] governed the case.'"  Fed. Defs.' Reply. at 3 & n.2; *see also* [Fed.] Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Leave to File TAC, ECF No. 161.

Contrary to Plaintiff's representation, Plaintiff failed to comply with the court's Jan. 20 Order.  As such, the Third Amended Complaint did not become the operative complaint with Plaintiff's filing of the document or the belated motion for leave to file the Third Amended Complaint, nor was it the operative pleading at the time of Federal

Court No. 25-CV-00789                                                    Page 27

Defendants' submission of opposition to the Third Amended Complaint.[17]  In any case,

the proposed Third Amended Complaint would not cure the Second Amended

Complaint's defects.  Regardless of the proposed amendments, Federal Defendants are

still protected by judicial immunity, *Bivens* does not extend to the constitutional claims

pleaded by Plaintiff, and this court could still decline to exercise supplemental

jurisdiction over claims against Federal Defendants and OpenAI that arise under state

law.  As such, this court need not address whether Plaintiff lacks standing to bring the

state claims, *see* Fed. Defs.' Mem. at 20, 23; OpenAI's Mem. at 6–9, and whether

reinstating Attorney Lee as a co-plaintiff would resolve any issues of standing.

### CONCLUSION

For the foregoing reasons, Federal Defendants' motion to dismiss (ECF No. 171)

and OpenAI's motion to dismiss (ECF No. 169) are **GRANTED**.  The Clerk of Court is

respectfully directed to enter judgment accordingly and close the case.


                                                    /s/      Mark A. Barnett
                                                    Mark A. Barnett, Chief Judge

Dated: July 15, 2026
            New York, New York

---

[17] Even if Plaintiff's filing of the document had been proper, it is necessary for a court to grant the motion for leave to file an amended complaint for it to become operative.  The court did not grant this motion for leave to file a third amended complaint.