UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

MINHYE PARK,                                      Civil Docket No.: 1:25-cv-789

                                   Plaintiffs,

                  -against-

JUDGES BARRINGTON D. PARKER, ALISON J. NATHAN, and SARAH A. L. MERRIAM
of the United States Court of Appeals for the Second Circuit, in their individual capacities;
JUDGE PAMELA K. CHEN and MAGISTRATE JUDGE LOIS BLOOM of the United States
District Court for the Eastern District of New York, in their individual capacities;
CATHERINE O'HAGAN WOLFE, in her official and individual capacities as Clerk of the
Second Circuit; DAVID COON and TERRENCE M. CONNORS, in their official capacities as
members of the Committee on Admissions and Grievances; OPENAI, INC.,

                                   Defendants.
-------------------------------------------------------------------X

### NOTICE OF MOTION TO ALTER OR AMEND JUDGMENT, FOR RECONSIDERATION, AND FOR LIMITED RECORD SUPPLEMENTATION

**PLEASE TAKE NOTICE** that, upon the accompanying Memorandum of Law, the

docket materials and exhibits cited therein, the existing record in this action, and, to the extent

permitted or directed by the Court, the accompanying Affirmation/Declaration of Jae S. Lee,

Esq., Plaintiff Minhye Park will move this Court, before the Honorable Mark A. Barnett, for an

Order pursuant to Federal Rule of Civil Procedure 59(e), Local Civil Rule 6.3 to the extent

applicable, Federal Rules of Civil Procedure 5(d)(4), 6(b), 15(a)(2), and 83(a)(2) as relevant to

the filing and amendment issues, and alternatively Federal Rule of Civil Procedure 60(b)(1) and

(6), altering or amending the Judgment entered July 17, 2026 (ECF No. 179) and reconsidering

the July 15, 2026 Opinion (ECF No. 176).

Plaintiff seeks: (1) reconsideration of the determination that the Second Amended

Complaint governed the motions to dismiss, including determination of the status and legal effect

of Plaintiff's court-directed Third Amended Complaint application and ECF No. 168; (2) reconsideration of any use of CM/ECF or brief technical-timing errors as forfeiture of amendment rights under Rules 5(d)(4), 6(b), 15(a)(2), and 83(a)(2); (3) preservation, in camera review, production, or other limited supplementation of the CM/ECF record necessary to determine what was actually submitted and received; (4) reconsideration of judicial notice and judicial, quasi-judicial, clerk, and related immunity under actor- and function-specific standards; (5) reconsideration of the appellate-discipline, confidentiality, due-process, Wolfe, Lee v. Delta, access-to-courts, stigma-plus, bias, and selective-treatment allegations; (6) competent confirmation of the authorization applicable under 28 C.F.R. § 50.15 for DOJ representation of the Federal Defendants sued in their individual capacities; (7) reconsideration of the claims against OpenAI and supplemental jurisdiction if any antecedent federal-claim or operative-pleading ruling is altered; and (8) at minimum, amendment of the Judgment to specify that all state-law claims over which supplemental jurisdiction was declined are dismissed without prejudice and without merits-preclusive effect.

Plaintiff further requests such other and further relief as the Court deems just and proper.

Dated: August 13, 2026
       Uniondale, New York

Respectfully submitted,

JSLLAW OFFICE P.C.
 */s/ Jae S. Lee*
 JAE S. LEE
 626 RXR PLAZA
 UNIONDALE, NY 11556

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

MINHYE PARK,                              Civil Docket No.: 1:25-cv-789

                              Plaintiffs,

            -against-

JUDGES BARRINGTON D. PARKER, ALISON J. NATHAN, and SARAH A. L. MERRIAM
of the United States Court of Appeals for the Second Circuit, in their individual capacities;
JUDGE PAMELA K. CHEN and MAGISTRATE JUDGE LOIS BLOOM of the United States
District Court for the Eastern District of New York, in their individual capacities;
CATHERINE O'HAGAN WOLFE, in her official and individual capacities as Clerk of the
Second Circuit; DAVID COON and TERRENCE M. CONNORS, in their official capacities as
members of the Committee on Admissions and Grievances; OPENAI, INC.,

                              Defendants.
--------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO ALTER OR
AMEND JUDGMENT AND FOR RECONSIDERATION**

**PRELIMINARY STATEMENT**

This motion identifies threshold factual and legal errors that controlled the July 15, 2026

Opinion and July 17, 2026 Judgment. Plaintiff does not seek a second opportunity to reargue

every issue. She asks the Court to correct errors concerning the operative pleading, CM/ECF

filing history, judicial notice, immunity, the Park v. Kim discovery record, disciplinary authority

and confidentiality, clerk conduct, access to courts, OpenAI, and supplemental jurisdiction.

Those errors are interrelated because the Opinion repeatedly treated disputed procedural

characterizations as established historical facts and then used those assumed facts to foreclose

claims at the pleading stage.

1

The pleading history requires immediate clarification. The record does not identify a clear merits determination granting or denying the Second Amended Complaint before Plaintiff was directed to pursue a Third Amended Complaint ("TAC"). Plaintiff then repeatedly attempted to comply with the Court's TAC instructions. ECF No. 168, filed February 21, 2026, appears on the public docket with attachments identified as "Third Amended Complaint" and "redline comparison." The subsequent filing-error notice identified "wrong event type," not a missing pleading, missing redline, futility, bad faith, prejudice, or any other Rule 15 ground. Plaintiff reasonably understood that the substantive TAC materials had reached the Court and remained for judicial determination. Yet the Court did not thereafter grant or deny ECF No. 168 on Rule 15 merits before adjudicating March 9 motions directed expressly to the SAC.

The underlying *Park v. Kim* record presents an equally important factual dispute. At the August 11, 2021 conference, defense counsel Hayley Newman represented that "our expert has asked us" to obtain Plaintiff's remote abortion records as part of the expert's review. Defendant's later formal discovery responses stated that Defendant had "not yet retained an expert(s) for this case," including in responses concerning expert materials and abortion-related literature. Plaintiff also maintained that Dr. Kim and Plaintiff's expert refuted any causal relationship between the decade-old abortion and the alleged failure to complete the pregnancy-termination procedure.

The contradiction concerning Newman's asserted expert foundation was therefore material to intrusive discovery and required factfinding, not an assumption in Newman's favor. The later ChatGPT citation was materially different. The August 11 transcript establishes that counsel had already advanced the underlying minimum- or analogous-wage argument years before the AI-generated citation existed. The nonexistent case name did not create that legal theory, fabricate medical evidence, alter the malpractice merits, or cause any identified party to

2

obtain or lose substantive relief. Plaintiff alleges no intent to deceive. Yet that single verification error was escalated into professional discipline while Plaintiff's documented complaints concerning Newman's discovery representations received no comparable institutional scrutiny. Plaintiff alleges that this disparity, together with the treatment of her discovery compliance and court-access issues, supports selective-treatment and bias claims that cannot be resolved by accepting Defendants' account as true.

Immunity must likewise be analyzed by function, actor, jurisdiction, and source of authority. Plaintiff does not contend that a wrong or malicious judicial ruling automatically destroys immunity. She contends that immunity cannot be used to assume the very predicates in dispute—whether a challenged act was judicial at all, whether an underlying order or panel authorization existed, whether the actor had jurisdiction, and whether clerk, publication, disciplinary, or administrative conduct was merely ministerial. Judicial immunity protects qualifying judicial functions; it is not itself a source of substantive governmental power.

## STANDARD FOR RECONSIDERATION

Reconsideration is warranted where the Court overlooked controlling law or material facts, or where necessary to correct clear error or prevent manifest injustice. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142–43 (2d Cir. 2020). Plaintiff invokes Local Civil Rule 6.3 and Rule 59(e), and alternatively Rule 60(b) to the extent applicable. The motion focuses on matters already embedded in the record and on the legal consequences of the Court's treatment of those matters.

## I. THE OPERATIVE-PLEADING AND CM/ECF HISTORY REQUIRED A JUDICIAL DETERMINATION BEFORE FINAL DISMISSAL

The Court should first determine how the SAC became operative and what legal effect attached to the later TAC submissions. A label such as "Second Amended Complaint" or "Third

3

Amended Complaint" does not itself resolve Rule 15 status. If leave was required for the SAC, the record should identify the order or procedural basis by which it became operative. The later direction to file a TAC makes that antecedent question especially important.

The TAC history is concrete. Plaintiff repeatedly attempted to submit the proposed TAC, redline, and motion papers in response to changing CM/ECF instructions. The docket reflects deficiency notices involving event selection, filer selection, party selection, and related electronic mechanics. ECF No. 168 ultimately appeared with the TAC and redline attached; the later notice identified only the wrong event type. The Court did not thereafter adjudicate that February 21 submission under Rule 15(a)(2). "Leave was not granted" is not the same proposition as "leave was considered and denied on the merits."

Rule 5(d)(4) provides that the clerk must not refuse to file a paper solely because it is not in the prescribed form. Rule 83(a)(2) likewise limits enforcement of local-form requirements in a manner that causes a party to lose rights because of a nonwillful failure. *Pettaway v. Nat'l Recovery Sols., LLC*, 955 F.3d 299, 303–04 (2d Cir. 2020), confirms that electronic pleading mechanics should not obscure the substantive effect of an amended pleading. Although Pettaway involved amendment as of right and does not eliminate Rule 15(a)(2), its procedural principle reinforces the need to determine what pleading was actually submitted and what effect it should receive.

The same is true of the brief technical-delay issue. Plaintiff sought a short extension based on technical difficulties. A de minimis delay measured in approximately two hours, accompanied by prompt corrective action and no identified prejudice, is relevant to good cause or excusable neglect under Rule 6(b) and *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). The Court's own earlier treatment of the corrected SAC is

instructive: after service and electronic-filing issues, ECF No. 131 expressly deemed the corrected SAC timely and directed electronic filing. Courts in this District also have treated an initial attempted ECF filing as the effective filing date when a later clerk deficiency required refiling. See *Biehner v. City of New York*, 19-cv-9646 (JGK), and *Corley v. Spitzer*, 11-cv-9044.

The March 9 motions were directed to the SAC. Before those motions could supply the basis for final dismissal, the Court needed to resolve the status of the TAC application and ECF No. 168. If the TAC should have been accepted, corrected, or granted under Rule 15, Defendants' SAC-only motions could not simply be treated as motions against materially different allegations and parties without notice and analysis. *Foman v. Davis*, 371 U.S. 178, 182 (1962), and *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015), require a genuine Rule 15 determination rather than forfeiture through unexplained electronic mechanics.

## II. JUDICIAL NOTICE COULD NOT BE USED TO DECIDE THE DISPUTED HISTORICAL FACTS

The Opinion could notice that prior orders, docket entries, motions, and disciplinary documents existed. It could not notice contested assertions within those materials for their truth and then use those assertions to defeat Plaintiff's allegations. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773–74 (2d Cir. 1991), and *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156–57 (2d Cir. 2006), preserve that distinction.

That distinction is dispositive here. Plaintiff alleges that the prior discovery narrative itself was false or materially incomplete: she produced HIPAA authorizations and other discovery, Newman acknowledged receipt of medical materials, Plaintiff continued participating in discovery, and Plaintiff filed sanctions/discovery applications on September 22, 2021 and March 15, 2022. The approximately 351-page appellate appendix contained the record on which

5

Plaintiff relied. The existence of prior adverse rulings cannot establish that Plaintiff's contrary factual allegations are false when the later constitutional claims specifically challenge how those facts were handled.

The Court therefore should reconsider any conclusion that depends on accepting the prior noncompliance narrative, the characterization of Newman's conduct, or clerk-side descriptions as indisputable historical truth. The Rule 12(b)(6) question is plausibility based on the pleaded facts and properly considered materials, not whether prior judges previously accepted Defendants' account.

### III. IMMUNITY MUST BE RECONSIDERED ACT BY ACT; PLAINTIFF IDENTIFIES SPECIFIC ALLEGEDLY WRONGFUL FUNCTIONS

*Forrester v. White*, 484 U.S. 219 (1988), *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429 (1993), *Stump v. Sparkman*, 435 U.S. 349 (1978), *Mireles v. Waco*, 502 U.S. 9 (1991), and *Bliven v. Hunt*, 579 F.3d 204 (2d Cir. 2009), require a functional inquiry. Plaintiff does not argue that bias, malice, or legal error alone removes immunity. She argues that the Court must identify the particular act and determine whether it was judicial, administrative, ministerial, disciplinary, publication-related, or otherwise nonjudicial, and whether the actor possessed jurisdiction and authority for that act.

As to Judges Chen and Bloom, Plaintiff challenges more than the correctness of discovery rulings. She alleges that they knowingly disregarded documentary evidence of compliance; accepted Newman's materially disputed "our expert" representation without comparable scrutiny; permitted intrusive decade-old reproductive-history discovery on that asserted foundation; failed to meaningfully address Plaintiff's protective-order concerns regarding overnight Korea deposition scheduling; and escalated disputed discovery issues into

warnings and dismissal. To the extent these allegations concern rulings made within jurisdiction, damages immunity may apply even if the rulings were erroneous or malicious. But that does not permit the Court to treat the disputed facts underlying those rulings as true, nor does immunity resolve recusal, declaratory, access, or state-law questions outside the scope of a particular immunity.

As to the Second Circuit judicial and disciplinary defendants, Plaintiff challenges separately the merits-panel referral, later Grievance Panel and Committee functions, notice and show-cause procedures, confidentiality, publication, and post-mandate or independently administrative conduct. The Court must identify who made each decision, whether it was a judicial act in a case or a distinct disciplinary/administrative function, what rule authorized it, and whether an actual panel or judicial direction existed. Judicial office cannot substitute for that actor-specific analysis.

As to Clerk Wolfe and other court personnel, Plaintiff alleges acts involving docket entries, referrals, filing access, publication, removal or alteration of entries, and implementation of disciplinary or judicial directions. Antoine rejects automatic quasi-judicial immunity for personnel merely because they work for a court. Ministerial implementation of a valid judicial command may receive protection, but where Plaintiff alleges no underlying judicial decision existed, the predicate must be identified rather than presumed. The *Lee v. Delta* and *Park v. Newman* histories are pleaded as comparators demonstrating why clerk-generated docket events cannot automatically be equated with adjudications.

Judicial immunity is not a source of substantive power. It cannot retroactively create jurisdiction, authorize an act that no governing rule authorized, or convert a ministerial or administrative function into a judicial one. Plaintiff's argument is therefore narrower and

7

stronger than the proposition that judges "lose immunity when they break the law": immunity attaches only after the Court correctly characterizes the challenged function and jurisdiction.

## IV. THE PARK v. KIM RECORD AND NEWMAN'S "OUR EXPERT" REPRESENTATION REQUIRED FACTFINDING, NOT SELECTIVE CREDITING

At the August 11, 2021 conference, Newman represented that "our expert has asked us" to obtain Plaintiff's prior abortion records as part of the expert's review. Plaintiff challenged the medical relevance of an abortion approximately ten years earlier to the alleged failure to complete the pregnancy termination at issue. Plaintiff further relied on Dr. Kim's own evidence and Plaintiff's expert evidence as contradicting the asserted causal relationship.

Defendant's later formal discovery responses stated that Defendant had "not yet retained an expert(s) for this case." Similar responses were made to demands for expert materials, curricula vitae, and literature concerning abortion-related opinions. Plaintiff does not ask the Court to assume from this wording alone that Newman necessarily fabricated an expert; a consulting and retained testifying expert can be different. But the contradiction plainly creates a factual question: who was the expert Newman invoked, what was the expert's status, what review had occurred, and did that person actually request the remote abortion records? Plaintiff alleges that Newman knowingly used a nonexistent or falsely characterized expert foundation. That allegation could not properly be resolved against Plaintiff on a motion to dismiss.

The deposition chronology reinforces the pleaded selective-treatment pattern. Newman insisted on scheduling that Plaintiff alleges would have required overnight consecutive deposition sessions in South Korea despite Plaintiff's willingness to sit extremely late and her proposed alternatives. Plaintiff sought protective relief. After Alejandra Gil later handled the defense, workable scheduling was arranged and the depositions were completed over two days.

8

Plaintiff relies on this sequence not because every scheduling dispute creates a constitutional claim, but because it supplies a concrete comparator for the allegation that Newman's conduct was repeatedly insulated while Plaintiff's alleged deficiencies were magnified.

The original malpractice merits also matter as factual context. Plaintiff's appellate submissions identified her expert report, Dr. Kim's note and deposition testimony, and other materials supporting departure and causation. Plaintiff alleges that the malpractice claims had evidentiary support and were terminated through procedural sanctions rather than merits adjudication. The reconsideration question is not whether this Court should retry the malpractice action, but whether it may dismiss later constitutional and selective-treatment claims by presuming that the prior procedural narrative was unquestionably correct.

## V. THE AI CITATION INVOLVED NO ALLEGED INTENT TO DECEIVE AND WAS TREATED RADICALLY DIFFERENTLY FROM NEWMAN'S MATERIAL DISCOVERY REPRESENTATION

The August 11 transcript establishes that counsel's minimum- or analogous-wage argument predated ChatGPT by years. Counsel attempted to explain that when conventional income records were unavailable, a minimum or comparable wage measure could provide a conservative damages methodology. Judge Bloom rejected the Workers' Compensation analogy. Whatever the ultimate legal merit of that methodology, the underlying argument indisputably existed before the later nonexistent case citation.

The AI error therefore concerned verification of a case name, not invention of the underlying theory. Plaintiff alleges no intent to deceive, no fabrication of medical evidence, no alteration of liability facts, no party sanctions motion based on the citation, and no identified litigant who obtained or lost substantive relief because of it. The error should not be minimized, but intent, materiality, prejudice, and proportionality cannot be erased.

9

Plaintiff alleges a concrete disparity. Newman's "our expert" representation was made directly to the trial court during active merits discovery and supplied an asserted medical basis for obtaining highly private reproductive records. Defendant's later written responses created a material contradiction about the expert foundation. Plaintiff's sanctions complaints concerning Newman did not produce comparable scrutiny. By contrast, counsel's single unverified AI-generated case name on a collateral damages issue was escalated into disciplinary and public professional consequences. Plaintiff alleges that this differential treatment supports bias, selective enforcement, retaliation, and unequal treatment.

## VI. THE DISCIPLINARY CLAIMS REQUIRE THE CORRECT RULES, ACTOR-SPECIFIC AUTHORITY, DUE PROCESS, AND CONFIDENTIALITY ANALYSIS

The Opinion should separately analyze the January 30, 2024 merits-panel referral and every later disciplinary step. FRAP 46(c) requires reasonable notice, an opportunity to show cause, and, if requested, a hearing before discipline. *In re Ruffalo*, 390 U.S. 544 (1968), underscores that attorney discipline requires procedural due process. Local Rule 46.2 separately governs grievance proceedings and confidentiality.

Plaintiff alleges that later actors exceeded or departed from the limited referral, that notice and evidentiary procedures were deficient, and that confidential disciplinary information was disseminated or republished beyond lawful authority. Those allegations require identification of the actor, rule, decision, and authorization for each challenged step. A merits-panel referral does not itself prove that every later act by a grievance body, committee member, clerk, or publication mechanism was a protected judicial act.

Plaintiff also alleges that the disciplinary process was used disproportionately despite the absence of intent to deceive and despite materially different treatment of Newman's alleged

10

discovery misconduct. Whether those allegations ultimately establish liability depends on the available cause of action and immunity analysis, but they cannot be rejected by collapsing all disciplinary functions into the original merits judgment.

## VII. CLERK CONDUCT, LEE v. DELTA, AND ACCESS TO COURTS REQUIRE ACTOR-SPECIFIC ANALYSIS

Plaintiff's Wolfe allegations concern whether specific docket, referral, publication, filing-access, or implementation acts were supported by an underlying judicial decision and whether the function was ministerial or independently discretionary. *Lee v. Delta* is pleaded as a comparator concerning a later clerk referral/publication event. *Park v. Newman* is relevant only briefly as additional context showing that filing mechanics can affect access to papers; Plaintiff does not rely on ordinary filing error itself as an independent constitutional violation.

*Christopher v. Harbury*, 536 U.S. 403 (2002), requires an access-to-courts plaintiff to identify the underlying claim and the official acts frustrating its presentation. Plaintiff identifies underlying malpractice, appellate, amended-pleading, and related claims and alleges that particular filing/referral acts prevented or impaired adjudication. The Court should analyze those allegations as pleaded rather than relabel every asserted non-adjudication as merely an adverse merits decision.

The requested CM/ECF record is therefore targeted, not speculative. Plaintiff seeks the original pre-modification PDFs and attachments, event/filer/party selections, timestamps, audit history, deficiency codes, Help Desk or ECF Pool records, staff modifications, and historical filing rules for the disputed entries. Those objective materials can establish what the system actually received and whether the problem was substantive noncompliance or curable electronic form.

11

## VIII. DOJ REPRESENTATION AUTHORITY SHOULD BE CONFIRMED WITHOUT CONFUSING REPRESENTATION WITH IMMUNITY

Plaintiff previously challenged the basis for Department of Justice representation of individual-capacity Federal Defendants. Under 28 C.F.R. § 50.15, representation depends on Departmental determinations. Plaintiff requests competent confirmation of the applicable authorization for each individual-capacity defendant. At the same time, the memorandum does not contend that an internal authorization document necessarily had to be publicly filed. Nor does DOJ authorization decide whether the challenged conduct was lawful, within jurisdiction, within scope, or immune. Representation authority and merits immunity are separate questions.

## IX. OPENAI AND SUPPLEMENTAL JURISDICTION MUST BE REVISITED IF ANY FEDERAL CLAIM IS RESTORED

OpenAI appeared, filed a Rule 7.1 disclosure, and filed a motion to dismiss; Plaintiff does not contend otherwise. But no merits discovery adjudicated the product facts uniquely within OpenAI's possession, including system design, safeguards, warnings, internal knowledge, testing, foreseeability, causation, negligence, warranty, or product-liability issues. The July 15 disposition of those state-law theories rested on the Court's decision to decline supplemental jurisdiction after dismissing all federal claims, not on a developed merits record.

If any federal claim is restored, the premise for declining jurisdiction under 28 U.S.C. § 1367(c)(3) changes. The Court should then reconsider supplemental jurisdiction over all related state-law claims against all Defendants, considering judicial economy, convenience, fairness, and the common factual nucleus. If no federal claim is restored, the Judgment should state expressly that every state-law claim over which supplemental jurisdiction was declined is dismissed without prejudice and without merits-preclusive effect. *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122–24 (2d Cir. 2006).

12

## X. RECUSAL, BIAS, AND SELECTIVE TREATMENT ARE PLEADED THROUGH SPECIFIC COMPARATORS

Plaintiff does not rely solely on adverse rulings. She identifies the treatment of Newman's expert representation, remote-abortion discovery, overnight-deposition demands, Plaintiff's sanctions applications, the escalation of alleged discovery deficiencies, the later AI-citation discipline, and the *Lee v. Delta* clerk/referral comparator. Plaintiff alleges that this cumulative pattern supports bias, discrimination, retaliation, and selective treatment.

Those allegations are serious and remain disputed; the motion does not ask the Court to deem discriminatory intent proven. It asks the Court not to extinguish the claims by crediting Defendants' account of the same contested events. Section 455 and Rule 12(b)(6) address different questions from damages immunity. Immunity for a qualifying judicial act does not establish that disputed facts are true, make bias lawful, or convert administrative conduct into judicial action.

### RELIEF REQUESTED

Plaintiff respectfully requests that the Court: (1) reconsider the July 15 Opinion and alter or amend the July 17 Judgment; (2) determine the operative pleading from the actual amendment orders and complete CM/ECF record; (3) preserve and review or order limited production of the objective electronic filing records necessary to determine what Plaintiff submitted and what defects were identified; (4) decide the TAC under Rules 5(d)(4), 6(b), 15(a)(2), and 83(a)(2) rather than treating electronic-form errors as abandonment; (5) reconsider judicial notice under Kramer and Global Network; (6) conduct immunity analysis defendant by defendant and act by act under Forrester, Antoine, Stump, Mireles, and Bliven; (7) reconsider the Park v. Kim discovery foundation, Newman comparator evidence, and AI-citation context without resolving

13

disputed facts against Plaintiff; (8) separately analyze the disciplinary actors and procedures under FRAP 46(c), Local Rule 46.2, and In re Ruffalo; (9) evaluate the actor-specific Wolfe, *Lee v. Delta*, and access-to-courts allegations; (10) require competent confirmation of DOJ individual-capacity representation authorization; (11) reconsider OpenAI and supplemental jurisdiction if any federal claim is restored; and (12) alternatively amend the Judgment to make explicit that all state-law claims declined under § 1367 are dismissed without prejudice and without merits-preclusive effect.

## CONCLUSION

The July 15 Opinion should be reconsidered because threshold procedural and factual predicates were resolved in a manner that foreclosed claims before the disputed predicates themselves were properly determined. The Court should establish which pleading was operative; determine the legal status of ECF No. 168 and the brief technical filing issues; distinguish judicial notice of a document's existence from acceptance of disputed assertions within it; analyze immunity by function and jurisdiction; confront the documented contradiction surrounding Newman's asserted expert foundation and the actual discovery record; evaluate the AI citation according to its true context, including the absence of alleged intent to deceive and identified merits prejudice; apply the governing disciplinary and confidentiality rules actor by actor; and revisit supplemental jurisdiction if any federal claim is restored. At minimum, every state-law claim declined under § 1367 should be expressly dismissed without prejudice.

Dated: August 13, 2026
      Uniondale, New York

Respectfully submitted,

JSLLAW OFFICE P.C.
*/s/ Jae S. Lee*
JAE S. LEE

14

626 RXR PLAZA
UNIONDALE, NY 11556